Michael SCHAEFER, Plaintiff–
Appellant,

v.

Mischelle TOWNSEND, Registrar of
Voters, County of Riverside; Bill
Jones, Secretary of State, State of Cal-
ifornia, Defendants–Appellees.

No. 98–55718.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 4, 1999

Filed June 20, 2000

Michael Schaefer (pro se) Las Vegas, Nevada, for the plaintiff-appellant.

Linda Cabatic, Paul Dobson, and Marsha A. Bedwell (argued), Deputy Attorneys General, Sacramento, California, for defendant-appellee Bill Jones.

William Katzenstein, Robert Pepper, Lucy Furuta, County of Riverside, Riverside, California, for defendant-appellee Mischelle Townsend.

Before: PREGERSON, NOONAN, and O'SCANNLAIN, Circuit Judges.

O'SCANNLAIN, Circuit Judge:

We must decide whether California may require that candidates for the United States House of Representatives reside in the state when filing nomination papers, as distinguished from when elected.

I

Michael Schaefer, a Nevada resident, sought to file as a candidate in the special Congressional election of April 7, 1998 to fill the vacancy for the 44th Congressional District of California. The seat was previously held by the late Congressman Sonny Bono who died while in office. Mischelle Townsend, the Registrar of Voters for Riverside County, refused to give Schaefer the required nomination papers because he was not registered to vote in California as required by California Elections Code § 201. Under Section 321 of that code, Schaefer could not register to vote without first establishing residency in California. He refused to become a resident until elected.

Schaefer filed a complaint in the United States District Court for the Central District of California against Townsend and Bill Jones, the Secretary of State (collectively, "California") seeking a declaration of his rights and the issuance of an injunction compelling his admission to official candidacy. Schaefer alleged that, by requiring a candidate to reside in California before the election, the state enlarged upon the exclusive qualifications for members of the United States House of Repre-

sentatives in violation of the Constitution. Following a stipulated bench trial, the district court entered judgment in favor of California. The district court found that Section 201 did not act as an "absolute and permanent bar to a particular class of candidates" and therefore did not violate Schaefer's First and Fourteenth Amendment rights.

Schaefer filed this timely appeal.

## II

We must first decide whether this case is moot. California argues that because the contended seat has been filled, the controversy has been rendered moot and this court lacks jurisdiction to hear Schaefer's constitutional challenge. Generally, a case is rendered moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969); *see also Alaska Center For Environment v. U.S. Forest Service*, 189 F.3d 851, 854 (9th Cir.1999). When the case is "capable of repetition, yet evading review," however, the fact that the court cannot give Schaefer the full relief he sought will not render the case moot. *Dunn v. Blumstein*, 405 U.S. 330, 333 n. 2, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972) (quoting *Moore v. Ogilvie*, 394 U.S. 814, 816, 89 S.Ct. 1493, 23 L.Ed.2d 1 (1969)). Although the election has passed, Schaefer's claim is capable of repetition because in the future California would deny him or any other nonresident the right to file a declaration of candidacy. The short span of time between the filing deadline and the election makes such a challenge evasive of review.

California argues that this case does not come within this exception because Schaefer has demonstrated no likelihood of running for office in that state in the future. Schaefer refuses to disclose his intentions, but argues that his political aspirations are irrelevant in evaluating the mootness exception. California cites *Thorsted v. Munro*, 75 F.3d 454 (9th Cir. 1996), for the proposition that we should examine Schaefer's intentions regarding future candidacy. In *Thorsted*, we observed that the candidate's claim was not rendered moot because the allegations in his complaint indicated "his intent to seek reelection in the future." *Id.* at 456 (parenthesis omitted). The court never stated, however, that *only* when a candidate plans to seek reelection is the case not moot. The capable-of-repetition prong should not be construed as narrowly as California suggests. *See Dunn*, 405 U.S. at 333 n. 2, 92 S.Ct. 995. In *Dunn*, plaintiff Blumstein had been denied the right to vote because he had not resided in the state long enough to meet the durational residency requirements. *See id.* at 331, 92 S.Ct. 995. In an action challenging the residency requirements, the Supreme Court determined that the case was not rendered moot by the fact that he had by then resided in the jurisdiction long enough to vote in the next election. *See id.* at 331–32, 92 S.Ct. 995. The Court reasoned that "the laws in question remain on the books, and Blumstein has standing to challenge them as a member of the class of people affected by the presently written statute." *Id.* at 333 n. 2, 92 S.Ct. 995. In *Joyner v. Mofford*, 706 F.2d 1523, 1527 (9th Cir.1983), we followed *Dunn* stating: "If [election law] cases were rendered moot by the occurrence of an election, many constitutionally suspect election laws ... could never reach appellate review." Both *Dunn* and *Joyner* proceeded to the merits without examining the future political intentions of the challengers. Schaefer's challenge is capable of repetition, yet evades review and is therefore not moot.[1]

---

1. For the same reasons, we reject California's suggestion that the case is moot because Schaefer later filed candidacy papers for a different office listing his residence as California. California acknowledges that when

Schaefer attempted to file nomination papers for the election at issue here, Townsend rejected the documents because Schaefer was not a resident of California at the time. That the election has passed or that Schaefer may

## III

The Qualifications Clause of the Constitution sets forth the requirements for membership in the United States House of Representatives:

No Person shall be a Representative who shall not have attained to the Age of twenty five Years, and been seven Years a Citizen of the United States, and who shall not, when elected, be an Inhabitant of that State in which he shall be chosen.

U.S. CONST. art. I, § 2, cl. 2.

California law requires that a candidate for elected office reside in the state at the time nomination papers are filed with the Registrar of Voters (i.e., prior to the election). Section 201 provides:

Unless otherwise specifically provided, no person is eligible to be elected ... unless that person is a registered voter and otherwise qualified to vote for that office at the time that nomination papers are issued to the person....

Cal. Elec.Code § 201. California law ordinarily requires candidates to file nomination papers more than 83 days before the election. *See* Cal. Elec.Code §§ 8021, 8403.[2] Moreover, in order to be a registered voter, an individual must be "a resident of an election precinct at least 29 days prior to an election." Cal. Elec.Code § 321. In contrast, the Qualifications Clause requires only that *"when elected,* [the Representative] be an Inhabitant of that State in which he shall be chosen." U.S. Const. art. I, § 2, cl. 2 (emphasis added). Schaefer claims that California's requirement amounts to an unconstitutional addition to the Qualifications Clause.

We take guidance from the Supreme Court's most recent examination of the Qualifications Clause, *U.S. Term Limits, Inc. v. Thornton,* 514 U.S. 779, 115 S.Ct. 1842, 131 L.Ed.2d 881 (1995). In *Term Limits,* the Court considered a challenge to an amendment to the Arkansas state constitution which imposed term limits on the state's congressional delegation. Section 3 of Amendment 73 provided that, after being elected to three or more terms in the House of Representatives or the Senate, a person "shall not be certified as a candidate and shall not be eligible to have his/her name placed on the ballot for election...." *Id.* at 784, 115 S.Ct. 1842. Testing the constitutionality of Section 3, the Court first inquired "whether the Constitution forbids States to add to or alter the qualifications specifically enumerated in the Constitution." *Id.* at 787, 115 S.Ct. 1842. To answer this question, the Court turned to its prior resolution of a similar issue addressed years earlier in *Powell:* "whether Congress has the power to add to or alter the qualifications of its members." *Term Limits,* 514 U.S. at 787, 115 S.Ct. 1842. The *Powell* Court held "that in judging the qualifications of its members Congress is limited to the standing qualifications prescribed in the Constitution." 395 U.S. at 550, 89 S.Ct. 1944. The Court based its holding on the relevant historical materials surrounding the Qualifications Clause and on the egalitarian notion " 'that the people should choose whom they please to govern them.' " *Id.* at 547, 89 S.Ct. 1944 (quoting 2 DEBATES ON THE ADOPTION OF THE FEDERAL CONSTITUTION 257 (Jonathan Elliot ed. 1876) (Alexander Hamilton, New York)).

After reaffirming the holding in *Powell,* the *Term Limits* Court proceeded to de-

---

have since moved to California does not render the case moot.

2. California argues that Schaefer would have been required to maintain a state residence for 43 days prior to this election. We observe, however, that this was an emergency election and that the required period of residency could be significantly longer in a nor-

mal election. *See, e.g.,* Cal. Elec.Code § 8021 (requiring that primary party nominees deliver nomination documents to the elections official 83 days before the primary election); Cal. Elec.Code § 8403 (requiring that independent nominees deliver nomination documents to the elections official 88 days before the election).

termine whether the States had the power to add qualifications. *See* 514 U.S. at 798, 115 S.Ct. 1842. The Court first noted that such power could not have been reserved to the States under the Tenth Amendment[3] as no federal government existed until the Constitution was ratified; the Tenth Amendment, therefore, could not have reserved a power to qualify delegates to a congressional body which did not yet exist. *See id.* at 800–03, 115 S.Ct. 1842. Concluding that the right to elect federal representatives was a "new right, arising from the Constitution itself," the *Term Limits* Court then examined additional historical evidence specifically addressing the preclusion of States' power to qualify congressional delegates. *See id.* at 805, 115 S.Ct. 1842. Despite the fact that "term limits or 'rotation' was a major source of controversy[, t]he draft of the Constitution that was submitted for ratification contained no provision for rotation." *Id.* at 812, 115 S.Ct. 1842. The Court was especially persuaded by "the Framers' wariness over the potential for state abuse" and the need for national uniformity. *Id.* at 811, 115 S.Ct. 1842. Over a powerful dissent written by Justice Thomas and joined by three other justices, the Court concluded "that the Framers intended the Constitution to be the exclusive source of qualifications for Members of Congress, and that the Framers thereby 'divested' States of any power to add qualifications." *Id.* at 800–01, 115 S.Ct. 1842.

■ We begin the inquiry at hand bound by *Term Limits:* California does not "possess the power to supplement the exclusive qualifications set forth in the text of the Constitution." *Id.* at 827, 115 S.Ct. 1842. Therefore, we must determine whether the residence requirements of Sections 201 and 321 constitute an additional qualification precluded by the Constitution.

*Term Limits* again provides guidance. The Court held that a state provision creating an absolute bar to candidates, who otherwise meet the requirements of the Qualifications Clause, is unconstitutional. *See id.* at 828, 115 S.Ct. 1842. Although the amendment challenged in *Term Limits* merely prevented candidates' names from being printed on the ballot and did not create an absolute bar, it was "an indirect attempt to accomplish what the Constitution prohibits Arkansas from accomplishing directly." *Id.* at 829, 115 S.Ct. 1842. Thus the Court also held that "a state amendment is unconstitutional when it has the likely effect of handicapping a class of candidates and has the sole purpose of creating additional qualifications indirectly." *Id.* at 836, 115 S.Ct. 1842.

■ *Term Limits* thus introduces two inquiries which we must pursue in determining whether the requirements imposed by Sections 201 and 321 are unconstitutional additional qualifications. First, we ask whether the California statutes create an absolute bar to candidates who would otherwise qualify under the Qualifications Clause. If they do not, we next ask whether they have the likely effect of handicapping an otherwise qualified class of candidates.[4]

3. "The powers not delegated to the united states by the constitution, nor prohibited by it to the states, are reserved to the states respectively, or to the people." U.S. CONST. amend. X.

4. The exact rule from *Term Limits* asks whether the state provision "has the likely effect of handicapping a class of candidates and has the sole purpose of creating additional qualifications indirectly." *Term Limits*, 514 U.S. at 836, 115 S.Ct. 1842. We do not construe the phrases "likely effect of handicapping a class of candidates" and the "sole

purpose of creating additional qualifications indirectly" as two distinct elements. The *Term Limits* Court stated that "[o]ur cases ... provide little support for the contention that a state-imposed ballot access restriction is constitutional when it is undertaken for the twin goals of disadvantaging a particular class of candidates and evading the dictates of the Qualifications Clauses." *Id.* at 835, 115 S.Ct. 1842. Thus, in determining whether the statutes handicap a class of candidates, we simultaneously determine whether the statutes

The district court found that California's residency requirements did not create a "permanent and absolute bar" to Schaefer's candidacy. The district court, however, failed to continue the inquiry required by *Term Limits*. The court should have proceeded to determine whether California's election laws act as an additional qualification indirectly by handicapping the class of nonresident candidates.

Are nonresident candidates a class of Constitutional concern? To answer this inquiry, we turn to the language of the Qualifications Clause as well as to the relevant historical material surrounding its adoption. In the clause, the Founders simply specified that a Representative be an "Inhabitant of that State" when elected. U.S. Const. art. I, § 2, cl. 2.[5] This specific time at which the Constitution mandates residency bars the states from requiring residency before the election.

History supports this construction. The Framers discussed and explicitly rejected any requirement of in-state residency before the election. The Records of the Federal Convention show that the Framers intended to preclude any further requirement of residency prior to the date of election. Debate on the matter of an in-state residency requirement was touched off when John Rutledge (South Carolina) proposed a seven-year requirement. *See* FOUNDERS at 71. Others thought a one-year or three-year period sufficient. *See id.* George Read (Delaware), opposing any period of previous residence, "remind-

ed [Mr. Rutledge] that we were now forming a Natil. Govt. and such a regulation would correspond little with the idea that we were one people." *Id.* James Wilson (Pennsylvania) concurred. *See id.* Mercer suggested that "such a regulation would present a greater alienship among the States than existed under the old federal system. It would interweave local prejudices & State distinctions in the very Constitution which is meant to cure them." *Id.* Hugh Williamson (North Carolina) opined that "[n]ew residents if elected will be most zealous to Conform to the will of their constituents, as their conduct will be watched with a more jealous eye." *Id.* at 72. Still others argued against the in-state residency requirement for other reasons. Madison suggested that the newly formed States in the West could not have representation if the Constitution included a residency requirement. *See id.* at 71. Wilson was concerned that legislators residing at the seat of Congress would be disqualified for not residing in their state. *See id.* Those favoring the restriction expressed concern that a nonresident would not have adequate familiarity with the affairs of the state represented. *See id.* at 71–72. The delegates voted down in turn three-year and one-year requirements of in-state residence. *See id.* at 72. The Framers thus drafted the Constitution having explicitly rejected any residency requirement. It would appear then that California law imposes the very requirement that the Framers purposefully excluded

have the sole purpose of creating an additional qualification.

**5.** The records of the federal convention reveal the framers' deliberate selection of the word "inhabitant." The original term was "resident." 2 RECORDS OF THE FEDERAL CONVENTION 216 (M. Farrand Ed.) (1911), *reprinted in* 2 THE FOUNDERS' CONSTITUTION at 71 (Philip B. Kurland & Ralph Lerner Eds.) (1987) (Hereinafter Founders). Roger Sherman (Connecticut) moved to strike "resident" replacing it with "inhabitant." *Id.* He reasoned that latter term was "less liable to misconstruction." *Id.* James Madison (Virginia) seconded the motion agreeing that "both were vague, but

the latter is least so in common acceptation, and would not exclude persons absent occasionally for a considerable time on public or private business." *Id.* He wished to avoid the abuses in construing the term "resident" that had occurred in Virginia. *See id.* Gouverneur Morris (Pennsylvania) and John Francis Mercer (Maryland) agreed reporting disputes that erupted in New York and Maryland over the term "resident." *See id.* No issue regarding the possible distinction between the Framers' use of the word "inhabitant" and the California residence requirement is raised by this case, and for present purposes we view them as interchangeable.

from the Constitution. Concluding that nonresident candidates are a class of constitutional concern, we next inquire whether California's residency requirement handicaps the class.

California requires that candidates register to vote before filing nomination papers. *See* Cal. Elec.Code § 201. Registering to vote, in turn, requires candidates to complete a registration form and to reside in the state. *See* Cal. Elec.Code § 321. Filing the registration form is justified by the state's right to maintain order in its elections proceedings. *Cf. Storer v. Brown,* 415 U.S. 724, 730, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974) ("there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes"). On the other hand, requiring that candidates establish in-state residency well in advance of the election is not so justified. The course of the campaign from the time of filing, through the primary, and on to election day requires nonresident candidates to maintain in-state residence for a period of several weeks to months. Such a requirement hampers nonresident candidates with homes, families and jobs in another state. The burdens created by the residency requirement may very well deter candidates from running for Congress. Furthermore, California's residency requirement burdens the entire pool of out-of-state candidates, whereas the Constitution only requires in-state residency of one, the victor. We therefore hold that California's requirement that candidates to the House of Representatives reside within the state *before* election, violates the Constitution by handicapping the class of nonresident candidates who otherwise satisfy the Qualifications Clause.

## IV

California argues that the residency requirement is sustained by its power to regulate the procedural aspects of federal elections granted by U.S. CONST. art. I, § 4, cl. 1: "The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof." California contends that under the Elections Clause it is not limited squarely to regulating times, places and manner; rather, it has the power to adopt "generally-applicable and evenhanded restrictions that protect the integrity and reliability of the electoral process itself." *Anderson v. Celebrezze,* 460 U.S. 780, 788 n. 9, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983).

Prior to *Term Limits,* when faced with a viable Elections Clause argument, the Supreme Court commonly employed a balancing test, weighing the state's interests against the rights of candidates and voters, to measure the constitutionality of a challenged ballot access provision. *See id.,* at 789, 115 S.Ct. 1842 (outlining the balancing test[6]); *see also Burdick v. Takushi,* 504 U.S. 428, 433–34, 112 S.Ct. 2059, 119 L.Ed.2d 245 (1992) (reaffirming *Anderson* and recognizing that severe restrictions on the rights of candidates and voters are subject to strict scrutiny); *Bates v. Jones,* 131 F.3d 843, 846 (9th Cir.1997) (employing the *Anderson* test in upholding term limits for California state legislators). Accordingly, California invites us to balance its interests in maintaining the integrity of its ballot against the burden that its election laws place on nonresident candidates.

---

**6.** "[The court] must first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate. It then must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule. In passing judgment, the Court must not only determine the legitimacy and strength of each of those interests; it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights. Only after weighing all these factors is the reviewing court in a position to decide whether the challenged provision is unconstitutional." *Anderson,* 460 U.S. at 789, 103 S.Ct. 1564.

The *Term Limits* Court rejected such a broad reading of the Elections Clause and held the balancing test inapplicable where the challenged provision supplemented the Qualifications Clause and did not regulate a procedural aspect of an election or require a candidate to show a minimum level of support before running. The Court noted that: "The provisions at issue in ... our ... Elections Clause cases were thus constitutional because they regulated election procedures and did not even arguably impose any substantive qualification rendering a class of potential candidates ineligible for [a] ballot position." 514 U.S. at 835, 115 S.Ct. 1842. The Court distinguished other Elections Clause cases on the ground that "they did not involve measures that exclude candidates from the ballot without reference to the candidates' support in the electoral process." *Id.*

Likewise, California's residency requirement falls outside the scope of Elections Clause cases because it neither regulates the procedural aspects of the election nor requires some initial showing of support. California argues that the residency requirement is a procedural regulation furthering its interest in protecting its ballot from nonresident candidates who, upon winning the election, might fail to establish residence and thus force an emergency election to fill the seat. The Supreme Court has indeed recognized a state's interest "in avoiding confusion, deception, and even frustration of the democratic process at the general election." *Jenness v. Fortson,* 403 U.S. 431, 442, 91 S.Ct. 1970, 29 L.Ed.2d 554 (1971). The Court has upheld various state provisions pursuing this interest. *See, e.g., Roudebush v. Hartke,* 405 U.S. 15, 24–25, 92 S.Ct. 804, 31 L.Ed.2d 1 (1972) (upholding Indiana's authority to conduct a recount of the vote in an election to the United States Senate); *Marston v. Lewis,* 410 U.S. 679, 681–82, 93 S.Ct. 1211, 35 L.Ed.2d 627 (1973) (upholding a 50–day voter registration cut-off for the election of state and local officials). California's residency rule, however, is not merely a procedural regulation; it "im-

pose[s][a] substantive qualification [i.e., residency] rendering a class of potential candidates [i.e., nonresidents] ineligible for ballot positions." *Term Limits,* 514 U.S. at 835, 115 S.Ct. 1842. It contravenes the express language of the Qualifications Clause and thus extends far beyond any procedural requirement previously upheld, cutting deep into the rights of nonresident candidates and the voters who seek to associate with them: "The power to regulate the time, place, and manner of elections does not justify, without more, the abridgment of fundamental rights...." *Tashjian v. Republican Party of Conn.,* 479 U.S. 208, 217, 107 S.Ct. 544, 93 L.Ed.2d 514 (1986).

Furthermore, the residency requirement is not a provision "requiring some preliminary showing of a significant modicum of support." *Jenness,* 403 U.S. at 442, 91 S.Ct. 1970 (upholding Georgia's requirement that minor party candidates file a nominating petition signed by at least five percent of eligible voters in order to have their names placed on general election ballots); *see also American Party of Texas v. White,* 415 U.S. 767, 782–83, 94 S.Ct. 1296, 39 L.Ed.2d 744 (1974) (upholding part of a Texas statute requiring signatures from one percent of the vote from the previous gubernatorial election); *Andress v. Reed,* 880 F.2d 239, 241 (9th Cir.1989) (upholding California elections law which required payment of a $1,502 fee or submission of 10,000 supporting signatures). While California has the power to exclude candidates who cannot muster a preliminary showing of support, and could protect the interests it asserts here by so doing, it does not have the power to require residency prior to the time appointed by the Constitution. This is not to say, however, that California could not require candidates to file a document with their nomination papers attesting that they will be inhabitants of the state when elected. Consistent with *Term Limits,* we hold that because California's residency requirement as it applies to candidates for the United States House of

Representatives handicaps a class of candidates and falls outside the sphere of Elections Clause cases.

## V

The California residency requirement has the likely effect of handicapping the class of nonresident candidates who would otherwise meet the requirements of the Qualifications Clause. Therefore, because states do not have the power to add to or alter the requirements enumerated in the Qualifications Clause, Section 201 of the California Elections Code is unconstitutional insofar as it requires candidates for the state's delegation to the House of Representatives to reside in the state prior to the election.

REVERSED.