**CENTER FOR FOOD SAFETY; Kahea; Friends of the Earth, Inc., and Pesticide Action Network North America, Plaintiffs,**

v.

**Ann VENEMAN, Secretary, U.S. Department of Agriculture, William T. Hawks, Under Secretary of Agriculture for Marketing and Regulatory Programs; Bobby R. Acord, Deputy Administrator, U.S. Department of Agriculture, Animal and Plant Health Inspection Service, and Cindy Smith, Deputy Administrator, U.S. Department of Agriculture, Animal and Plant Health Inspection Service, Biotechnology Regulatory Services Program, Defendants,**

**and**

**The Biotechnology Industry Organization, Intervenor.**

**No. CV.03–00621 DAE BMK.**

United States District Court, D. Hawai'i.

March 29, 2005.

Paul H. Achitoff, Isaac H. Moriwake, Earthjustice Legal Defense Fund, Honolulu, HI, Joseph Mendelson, III, Peter T. Jenkins, Center for Food Safety, Washington, DC, for Center for Food Safety, Kahea, (The Hawaiian–Environmental Alliance), Friends of the Earth, Inc., Pesticide Action Network North America, plaintiffs.

Thomas A. Helper, Office of the United States Attorney, Honolulu, HI, John Za-

charia, Gregory D. Page, U.S. Department of Justice, Environment & Natural Resources Division, Washington, DC, for Ann Veneman, Secretary, U.S. Department of Agriculture, William T. Hawks, Under Secretary of Agriculture for Marketing and Regulatory Programs, Bobby R. Acord, Deputy Administrator, U.S. Department of Agriculture, Animal and Plant Health Inspection Service, Cindy Smith, Deputy Administrator, U.S. Department of Agriculture, Animal and Plant Health Inspection Service, Biotechnology Regulatory Services Program, defendants.

Margery S. Bronster, Jeannette E. Holmes, Bronster Crabtree & Hoshibata, Honolulu, HI, for Biotechnology Industry Organization, amicus.

## ORDER DENYING DEFENDANTS' MOTION TO DISMISS ON GROUNDS OF INTERVENING MOOTNESS

DAVID ALAN EZRA, Chief Judge.

The Court heard Defendants' Motion on March 28, 2005. Paul H. Achitoff, Esq., and Peter Jenkins, Esq., appeared at the hearing on behalf of Plaintiffs; John Zacharia, Esq., Gregory D. Page, Esq., and Thomas A. Helper, Esq., appeared at the hearing on behalf of Defendants; Jeannette Homes, Esq., appeared on behalf of Intervenor. After reviewing the motion and the supporting and opposing memoranda, the Court DENIES Defendants' Motion to Dismiss on Grounds of Intervening Mootness.

## BACKGROUND

The gravamen of Plaintiffs' Amended Complaint, filed on February 10, 2004, involves Defendants' alleged failure to comply with several federal statutes, including Section 7(a)(2) of the Endangered Species Act ("ESA"), 16 U.S.C. § 1536(a)(2), and the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 et seq. when it issued eight permits of the U.S. Department of Agriculture's Animal and Plant Health Inspection Service ("APHIS").[1] Specifically, Plaintiffs allege that Defendants permitted open-air field tests of experimental, genetically engineered, pharmaceutical-producing plant varieties ("GEPPVs") of crops such as corn. These plant varieties are engineered to produce biologically active drugs, hormones, vaccines and industrial chemicals.[2]

Plaintiffs assert that Hawaii has become a preferred site for field testing genetically engineered crops at thousands of plot locations throughout the islands. Plaintiffs' first through fifth claims involve Defendants' alleged failure to comply with NEPA in the promulgation of the field tests at issue in the instant case. Plaintiffs maintain that Defendants never pre-

---

1. The APHIS regulatory number for the eight permits and the name of the corporate or other applicant conduct the field tests are as follows: (1) 02–071–01R (Dow Chemical); (2) 02–141–01R (Meristem Therapeutics); (3) 02–108–02R (University of Kentucky); (4) 02–080–01R (CropTech); (5) 01–306–01R (Hawaii Agricultural Research Center); (6) 01–257–01R (Monsanto); (7) 01–187–01R (Prodi-Gene); and (8) 03–143–01R (Garst Seed Company).

2. Plaintiffs state that Defendants have issued permits allowing companies to grow crops in Hawaii to produce proteins such as cytokines, which suppress the immune system, interferon alpha, which may cause dementia and neurotoxicity, avidin, known to cause Vitamin B deficiency, and trypsin, an inhalant allergen known to cause occupational asthma in workers, amongst others.

pared an Environmental Impact Statement ("EIS") or environmental assessment ("EA") as they claim was required by NEPA before approving the permits at issue. Plaintiffs allege violations of ESA, 16 U.S.C. § 1533 *et seq.* in their sixth through tenth claims in part for Defendants' failure to consult with the United States Fish and Wildlife Service ("FWS") prior to issuing the permits.

Plaintiffs next assert in their eleventh claim for relief that Defendants violated the Plant Protection Act ("PPA"), 7 U.S.C. § 7711 *et seq.*, and the Administrative Procedure Act ("APA"), 5 U.S.C. 551 *et seq.*, by arbitrarily and capriciously denying their request to promulgate regulations under the PPA to both prohibit the challenged field tests generally and also prohibit the use of food crops affected by the tests. Plaintiffs seek declaratory and injunctive relief to compensate Plaintiffs for the risks Defendants' actions pose to public health, the environment, and the economy.

## PROCEDURAL HISTORY

On March 1, 2004, Defendants filed their Consolidated Motion to Dismiss for Lack of Jurisdiction and Failure to State a Claim. A core argument of Defendants' motion was the claim that Plaintiffs lacked standing to sue because Plaintiffs had not established that the environmental harms alleged would occur in any particular location in Hawaii that Plaintiffs either use or in which they physically reside. While disputing the legal merit of this argument, Plaintiffs also countered that they had been unable to bring forth such specific allegations because the locations of the testing sites were being withheld by Defendants despite Plaintiffs' requests for discovery.

On April 13, the magistrate judge granted Plaintiffs' motion to compel discovery of the test sites' precise locations. On April 19, Defendants moved for a protective order as well as reconsideration of the April 13 Order. The discovery order was stayed pending resolution of these motions. On June 29, the magistrate judge denied these motions. That same day, BIO was granted leave to intervene.

On July 9, 2004, Defendants and BIO filed appeals of the magistrate's June 29 Order denying Defendants' motion for a protective order. On August 3, 2004, this Court affirmed the magistrate judge's order for discovery and denied Defendants' consolidated motions. However, the Court held that the locations would be kept confidential and under seal for a 90–day period, during which time the Defendants could submit additional information on the issue of whether the GEPPV test sites should remain under seal. The Court held that the Plaintiffs would be given the chance to respond to this new evidence, if any was submitted, and the Court would then determine whether to lift or make permanent the 90–day bar on disclosure.

The Court heard Defendants' Consolidated Motion to Dismiss for Lack of Jurisdiction and Failure to State a Claim on July 26. On August 4, the Court issued an order requesting supplemental briefing of the issues; this order was issued in response to the Court's decision to defer judgment on Defendants' motion to dismiss until Plaintiffs were given access to the test site locations—information which the Court deemed necessary in order for Plaintiffs to adequately litigate the issue of standing. The Court ordered Plaintiffs to file their supplemental memorandum approximately one week after disclosure was made; Defendants would subsequently

have three days in which to file their response.

On August 9, the Court denied BIO's statement of appeal, holding that the same reasons underlying its earlier order affirming the magistrate's order would apply to this decision. In this order, the Court also addressed BIO's stated concerns regarding the risk of vandalism and theft at the testing sites should their locations be released. The Court explained that, in reference to the 90–period of safeguards created by its Order of August 3, "[t]he court's discovery order will be limited to disclosure of the field test locations to Plaintiffs' counsel, and select individuals in Plaintiffs' organizations, all of whom will keep the information strictly confidential by order of the court."

On August 10, 2004, BIO filed a motion for reconsideration of this Court's Order of August 9, which had created the 90–day seal and confidentiality rule. In the alternative, BIO asked the Court to stay for 90 days the order that granted Defendants 90 days to supplement the record. On August 19, the Court denied BIO's request for an additional 90–day stay, but stayed the proceedings pending the resolution of BIO's motion for reconsideration.

On November 3, the Court denied BIO's motion for reconsideration. In this order, the Court again addressed BIO's argument that the Court's previous orders had not sufficiently protected the test sites from potential vandalism or theft. In reference to its previous orders establishing the 90–day period of limited discovery:

> [T]his Court limited disclosure of the field test locations to "Plaintiffs' counsel, and select individuals in Plaintiffs' organizations." This Court also ordered those individuals to keep the information

strictly confidential. BIO acknowledges that the Denial limited the disclosure of the field test locations, but BIO stresses that the Denial did not sufficiently address significant disclosure issues.

> In restricting disclosure to select individuals, the Court ensured that neither of the Plaintiff organizations could distribute the disputed information to its general membership while complying with the Court's order. The Court limited the individuals to whom the crop location information could be given, and to ensure that those individuals did not indiscriminately divulge the information, the Court ordered them to keep the information strictly confidential.

(Order of Nov. 3 at 11.) The Court then ordered the parties to reach within 10 days an agreement regarding the issue of confidentiality, as applicable during the 90–day period, or to have the matter set for hearing before the magistrate judge. Thus, on November 3, 2004, the 90–day period finally began to run.

On November 1, BIO filed its supplement regarding evidence of irreparable injury. Plaintiffs filed their response to BIO's supplement on November 30. On December 14, BIO filed a motion to strike Plaintiffs' response, arguing that the Court had already held that testing locations would be kept confidential and under seal indefinitely. The Court issued an order on January 11, 2005, rejecting this argument and clarifying the apparent confusion among the parties on this issue.

Meanwhile, in accordance with the several orders issued by this Court regarding discovery of the testing locations, the magistrate judge issued an Order on December 22, 2004, requiring that the testing locations be revealed to Plaintiffs under

the strict terms of confidentiality imposed by that order. Five days later, on December 27, Defendants filed the instant "Motion to Dismiss on Grounds of Intervening Mootness." On March 3, 2005, Plaintiffs filed their opposition to this motion. Defendants filed their reply in support of the motion to dismiss on March 17.

Additionally, BIO and Defendants filed a motion to stay proceedings pending the resolution of that motion to dismiss on December 29, 2004.

On January 26, 2005, the Court issued an order denying without prejudice Defendants' original Motion to Dismiss. The order explained that the Court's ability to decide motion, which hinged on the Court's receipt of the additional requested briefing on the issue of standing, had been indefinitely delayed by the protracted discovery dispute. Thus, the Court denied the motion without prejudice pursuant to Federal Rule of Civil Procedure 56(f), with the understanding that the motion would be refiled after the additional, court-ordered discovery was conducted.

During a hearing on February 4, the Court denied the motion filed by BIO and Defendants to stay proceedings pending the resolution of the instant motion to dismiss. After the Court announced its ruling, Defendants tendered to Plaintiffs the requested information regarding the testing site locations.

## STANDARD OF REVIEW

■ A motion to dismiss under Rule 12(b)(1) of the Federal Rule of Civil Procedure is appropriate when the movant seeks to challenge the court's subject matter jurisdiction. Fed.R.Civ.P. 12(b)(1). Federal courts are courts of limited jurisdiction and possess only that power authorized by United States Constitution and statute, which is not to be expanded by judicial decree. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). The party asserting jurisdiction bears the burden of establishing subject matter jurisdiction. *Id.* When considering a motion to dismiss pursuant to Rule 12(b)(1), the Court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction. *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir.1988).

## DISCUSSION

In their Motion to Dismiss on Grounds of Intervening Mootness, Defendants argue that, because the disputed plantings have all been either harvested or removed and the required monitoring period has ended, the challenged permits have expired and rendered Plaintiffs' case moot. First, Plaintiffs' claims are moot, Defendants argue, because at this point there is no relief the Court may grant to Plaintiffs that would rectify the harm they allege. Second, Defendants argue that any claims Plaintiffs assert against future permits are not ripe.

Defendants also argue that neither the voluntary cessation doctrine nor the exception for wrongs capable of repetition but evading review should apply. Voluntary cessation does not apply, Defendants assert, because APHIS did not change its behavior "at will"; indeed, it was the voluntary behavior of third-party corporations that mooted Plaintiffs' claims. Moreover, Defendants urge the Court not to implicitly conclude that APHIS colluded with the regulated industry to avoid judicial review. Additionally, Defendants ar-

gue that the permitting and planting must not be deemed capable of repetition but evading review, because judicial review may easily occur at any of four points during the process. First, Defendants assert that APHIS now posts notices on their publicly accessible web site when a test permit application is received. Second, Defendants maintain that APHIS will post on this web site notice of which NEPA document type—either an EA, EIS, or categorical exclusion decision memorandum—it has elected to use regarding the permit application. Third, Defendants note, there is a 30–day comment period after the application is complete. Fourth, APHIS will post on its web site, Defendants assert, its decision regarding whether to grant or deny the application.

Plaintiffs counter in their opposition that their claims are not moot for two reasons. First, both the voluntary cessation doctrine and the exception for wrongs capable of repetition but evading review apply to this case, Plaintiffs argue. Second, Plaintiffs argue that several of their claims address the entire program regulating the field tests and do not rely on the pendency of those specific tests.

In their reply, Defendants reassert their argument that Plaintiffs' claims must be dismissed as moot because no lawful remedy can rectify the harm they allege. Defendants also argue that Plaintiffs' claims do not qualify as capable of repetition but evading review. This is so, they argue, because this issue of future permits is not ripe; indeed, Defendants assert that APHIS may in its future permitting decisions choose to comply with Plaintiffs' demands, thereby obviating the need to litigate the issue. Moreover, Defendants argue that Plaintiffs will have ample time

to adjudicate any issues raised by the new permits once they are issued.

The Court concludes that it need not reach the issue of whether the voluntary cessation doctrine applies, because the wrongs alleged by Plaintiffs clearly qualify as "capable of repetition, but evading review." Additionally, the Court accepts Plaintiffs' contentions that at least some of their claims are not impacted by Defendants' mootness arguments at all.

■■■ A claim will generally be dismissed as moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack,* 395 U.S. 486, 496, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969); *Schaefer v. Townsend,* 215 F.3d 1031, 1033 (9th Cir.2000); *Alaska Center For Environment v. U.S. Forest Service,* 189 F.3d 851, 854 (9th Cir.1999). However, an exception to this rule exists when the case is "capable of repetition, yet evading review." *Schaefer,* 215 F.3d at 1033. When the case is so categorized, the fact that the court cannot give the plaintiff the full relief originally sought will not render the case moot. *Id.* (citing *Dunn v. Blumstein,* 405 U.S. 330, 333 n. 2, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972); *Moore v. Ogilvie,* 394 U.S. 814, 816, 89 S.Ct. 1493, 23 L.Ed.2d 1 (1969)).

■■■ The "capable of repetition, yet evading review" exception to the general principle that a court must dismiss claims that are rendered moot was first established by the Supreme Court in *Southern Pacific Terminal Co. v. ICC.* 219 U.S. 498, 515, 31 S.Ct. 279, 55 L.Ed. 310 (1911); *see also Biodiversity Legal Foundation v. Badgley,* 309 F.3d 1166, 1173 (9th Cir. 2002). There are two requirements that must exist for the exception to apply: "(1) the duration of the challenged action is too

short to allow full litigation before it ceases, and (2) there is a reasonable expectation that the plaintiffs will be subjected to it again." *Badgley,* 309 F.3d at 1173 (citing *Greenpeace Action v. Franklin,* 14 F.3d 1324, 1329 (9th Cir.1992)).

■ The duration component is present where "the underlying action is almost certain to run its course before either this court or the Supreme Court can give the case full consideration." *Badgley,* 309 F.3d at 1173; *see also Greenpeace Action v. Franklin,* 14 F.3d at 1329–30 (holding that a regulation in effect for less than a year satisfied the durational component because a year is not enough time for judicial review); *Alaska Ctr. for the Env't v. U.S. Forest Serv.,* 189 F.3d 851, 855 (9th Cir.1999) (holding that two years was still not enough time to allow for full litigation). Thus, as the Ninth Circuit has explained, the action "evades review" when it, "in its regular course, resolves itself without allowing sufficient time for appellate review." *Badgley,* 309 F.3d at 1173–1174.

■ The second component of the exception requires the court to find that the challenged action will probably affect the plaintiffs in the future. *Id.* at 1174 (citing *Meyer v. Grant,* 486 U.S. 414, 417 n. 22, 108 S.Ct. 1886, 100 L.Ed.2d 425 (1988)). Both the United States Supreme Court and the Ninth Circuit have specified that, when the exception is invoked by a plaintiff seeking declaratory relief, the question is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Super Tire Eng'g Co. v. McCorkle,* 416 U.S. 115, 122, 94 S.Ct. 1694, 40 L.Ed.2d 1 (1974);

*Maryland Casualty Co. v. Pacific & Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941); *Badgley,* 309 F.3d at 1174–1175.

■ In the instant case, the Court finds evidence supporting the existence of both required elements. First, the Court evaluates whether the underlying action is almost certain to run its course before a court can give the case full consideration. Regarding the field test plantings at issue, the period between the first planting and the last harvest ranged from less than a week to more than a year; all terminated in less than two years. (Def. Mot. Dismiss filed 3/1/04, Hoffman Decl. at 6.) Moreover, APHIS announced in a letter dated January 14, 2004, a rule limiting the duration of biopharmaceutical permits and plantings to one growing season, or a maximum of one year. (Pl. Memo. In Opp'n, Ex. 3.) No stretch of the imagination would allow this Court to conclude that one year is sufficient time for a claim to be adjudicated from the trial level through appellate review. Indeed, in the instant case, one year was not sufficient time to allow even the completion of discovery or the litigation of jurisdictional issues. This finding is consistent with Ninth Circuit precedent, which has held that challenges to two-year permits meet the durational requirement for the exception, because two years is not a sufficient period of time to allow full litigation. *See, e.g., Badgley,* 309 F.3d at 1173; *Greenpeace Action,* 14 F.3d at 1329–30; *Alaska Ctr. for the Env't,* 189 F.3d at 855; *see also First Nat'l Bank v. Bellotti,* 435 U.S. 765, 774, 98 S.Ct. 1407, 55 L.Ed.2d 707 (1978) (holding that 18 months was not enough time for complete judicial review).

■ The second, the Court must assess whether the challenged action will proba-

bly affect the Plaintiffs in the future. *Badgley*, 309 F.3d at 1174. As Plaintiffs note, Defendants have themselves repeatedly asserted that the activity will recur on these cites. Indeed, Defendants own declarant, Dr. Neil Hoffman, stated the following:

Historically, biotechnology companies have used the same field-test sites repeatedly. This is particularly true in Hawaii where much of their breeding work goes on year round. BRS staff contacted Dow and Garst, two companies that recently had GEPPV trials in Hawaii. Garst has been at the same site since 1985 and has a 30 year lease on the property they are using. Dow has been using the same site since the 1960s. Therefore, it is a certainty that the locations previously used for GEPPVs will be used in the near future for other field trials, both pursuant and subject to future permits.

(Def. Corrected Reply in Supp. of Mot. for Protective Order filed 6/8/04, Hoffman Decl. at ¶ 6; *see also* BIO Statement of Position filed 6/3/04, Phillips Decl. at ¶ 13 ("[T]hese sites are carefully chosen and are generally used for repeat plantings.").) Moreover, the Court finds that not only is it likely that such testing will continue in Hawaii, but it is also likely that the testing will continue under the circumstances to which Plaintiffs object. During the pendency of this lawsuit, at least 25 applications have been filed seeking permission to conduct biopharmaceutical field tests in other jurisdictions across the nation, and at least 10 have been approved by Defendants without an EIS or EA. (Pl. Memo. In Opp'n, Ex. 2.) As such, the Court finds that the record evidences a probability that the challenged action will affect Plaintiffs in the future.

Defendants argue that these points are not dispositive, because the Court nonetheless cannot provide an adequate remedy for the wrongs they allege. This argument ignores the express purpose of repetition-evasion doctrine, which is to create an exception to the general principles of mootness, so that "the fact that the court cannot give [a plaintiff] the full relief he sought will not render the case moot." *Schaefer*, 215 F.3d at 1033. Plaintiffs' complaint seeks both declaratory and injunctive relief. As explained above, the test for determining whether complaint seeking declaratory relief survives a mootness challenge is still "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *McCorkle*, 416 U.S. at 122, 94 S.Ct. 1694; *Maryland Casualty*, 312 U.S. at 273, 61 S.Ct. 510; *Badgley*, 309 F.3d at 1174–1175. Given the multiple assurances by Defendants that the challenged actions will recur, the Court finds that a substantial controversy of sufficient immediacy and reality still exists to warrant continuation of the suit.

During oral argument regarding Defendants' motion, Defendants highlighted two Ninth Circuit cases—*Headwaters, Inc. v. Bureau of Land Management* and *Friends of the Earth v. Bergland*—in support of their argument that, where a court is no longer able to award the plaintiff an adequate remedy for the alleged wrong, the suit must be dismissed as moot. *Headwaters*, 893 F.2d 1012 (9th Cir.1989); *Friends*, 576 F.2d 1377 (1978). In *Friends*, the plaintiffs challenged the decision of the Secretary of Agriculture, though the United States Forestry Service, to approve a plan for mining operations in a national forest; Plaintiffs alleged the decision violated NEPA. *Friends*, 576

F.2d at 1378. The district court granted summary judgment for the defendants, but while the plaintiffs' appeal was pending, the mining company struck water during the course of its exploratory activities and abandoned the project. *Id.* The Ninth Circuit remanded the case to the district court for dismissal as moot, explaining: "Where the activities sought to be enjoined have already occurred, and the appellate courts cannot undo what has already been done, the action is moot..... There is no reasonable possibility, based on what is before us, that [the mining company] will resume or repeat the exploratory operation which plaintiffs previously sought to enjoin." *Id.* at 1379 (internal citations omitted).

In *Headwaters,* the plaintiff sought a preliminary injunction against logging on three specific tracts of land, and a permanent injunction against logging on the three tracts without compliance with the Federal Land Policy and Management Act. *Headwaters,* 893 F.2d at 1015. The district court denied relief to the plaintiff, and before the Ninth Circuit could reach the merits of the appeal, the trees were cut and removed from the property. Citing *Friends,* the Ninth Circuit held the claim to be moot. *Id.* The court noted that, because the plaintiff sought both injunctive and declaratory relief, the court was obliged to consider the declaratory request irrespective of the mootness of the request for an injunction. However, the court concluded:

A case or controversy exists justifying declaratory relief only when "the challenged government activity ... is not contingent, has not evaporated or disappeared, and, by its continuing and brooding presence, casts what may well be a substantial adverse effect on the interests of the petitioning parties." The adverse effect, however, must not be "so remote and speculative that there [is] no tangible prejudice to the existing interests of the parties." Headwaters framed its case narrowly, and the policies against which it seeks a declaration can have no effect on the three [tracts of land].... We conclude, therefore, that Headwaters' claim for declaratory relief is also moot.

*Id.* at 1015–1016.

As Plaintiff notes, however, the Ninth Circuit's ruling in *Friends* is factually distinguishable from the instant controversy, because in *Friends* the court found there to be no likelihood that the plaintiffs would be subjected to the same alleged violation in the future. Additionally, more recent Ninth Circuit precedent has greatly narrowed the effect of *Headwaters.* In *Neighbors of Cuddy Mountain v. Alexander,* the Ninth Circuit found that, in a fact-pattern similar to that presented by *Headwaters,* a challenge under NEPA and NFMA to a decision allowing logging in a national forest was not moot simply because the logging had already occurred. *Neighbors,* 303 F.3d 1059 (9th Cir.2002). Despite the fact that the trees had already been cut and removed from the property, the court found that other remedies remained available that would mitigate the damage caused by the logging. *Id.* at 1066. These possible remedies included the following: a court order requiring the Forest Service to study the impact of the logging on species viability, and if necessary, to mitigate those impacts in both the area where the logging occurred and elsewhere in the forest; a court order requiring the Forest Service to adjust future timber plans to compensate for this allegedly unlawful one; a court order requiring

the monitoring of the allegedly affected birds' population trends and the developing of, if necessary, artificial habitats for their recovery. *Id.*

The court emphasized, however, that there was no need during the inquiry regarding mootness to reach a determination as to the propriety of particular kinds of equitable relief that could be granted if the plaintiff does in deed succeed on appeal; a court need only conclude that some effective form of relief is still available. *Neighbors*, 303 F.3d at 1066. The court also distinguished *Headwaters*, construing it narrowly to its facts. The court explained:

> Our decision in *Headwaters, Inc. v. Bureau of Land Mgmt.* is not to the contrary. There, plaintiffs filed a "narrowly-drawn" complaint seeking only to prevent defendants from logging three units of a sixteen unit timber sale. After the three units at issue had been logged pending appeal, we held the plaintiffs' claim for injunctive relief moot, reasoning that "[n]o injunction can restore the trees which were logged." We specifically distinguished, however, cases in which a plaintiff had "made a broad request for such other relief as the court deemed appropriate," noting that this circuit may construe such requests for relief "broadly to avoid mootness."

*Id.* (internal citations omitted). Because the complaint requested "such further relief as may be necessary and appropriate to avoid further irreparable harm," the type of broad relief distinguished in *Headwaters*, the court found viable relief to remain available. *Id.*

Indeed, the Ninth Circuit has held that courts must take special care when evaluating claims of mootness in environmental cases. In *Cantrell v. City of Long Beach*, the Ninth Circuit addressed a challenge to the sufficiency of an EIS prepared to assess the impact of a plan to develop a former naval station. 241 F.3d 674 (9th Cir.2001). In holding that the destruction of the property at issue did not render the case moot, the Court stated:

> When evaluating the issue of mootness in NEPA cases, we have repeatedly emphasized that if the completion of the action challenged under NEPA is sufficient to render the case nonjusticiable, entities "could merely ignore the requirements of NEPA, build its structures before a case gets to court, and then hide behind the mootness doctrine. Such a result is not acceptable." Accordingly, defendants in NEPA cases face a particularly heavy burden in establishing mootness.

*Id.* at 678 (internal citations omitted).

In the instant case, Plaintiffs' First Amended Complaint seeks declaratory and injunctive relief regarding specific permits, as well as declaratory relief regarding alleged program-wide violations, and "such other relief as may be just and proper." The Court finds that declaratory and equitable relief is still available to Plaintiffs, regardless of the completion of the testing at issue. As shown in the Ninth Circuit's previous decisions, such equitable relief could include a court order requiring of study of the impact the crop testing ultimately had on the surrounding environment, and if necessary, to take remedial measures. The Court does not reach any ruling regarding the propriety of such a remedy, should Plaintiffs ultimately prevail on the merits of their case; the possibility is only raised hypothetically to show that equitable remedies remain available and the case is not mooted. Moreover, claims

ten and eleven of Plaintiffs' complaint, which seek declaratory judgment regarding alleged programmatic violations of the Endangered Species Act, Plant Protection Act, and Administrative Procedure Act, are not affected by Defendants' mootness argument at all.

## CONCLUSION

For the reasons stated above, the Court DENIES Defendants' Motion to Dismiss on Grounds of Intervening Mootness.

IT IS SO ORDERED.