## No. 26227

Charles Duprey, Cheryl Duprey, Bonnie Colleen Horn, and John Leonard Horn, each individually and on their own behalf and each on behalf of all others similarly situated v. Byron A. Anderson, Secretary of State of the State of Colorado

(518 P.2d 807)

Decided January 28, 1974.   Rehearing denied February 19, 1974.

Jeremy Shamos, for plaintiff-appellees.

72

John P. Moore, Attorney General, John E. Bush, Deputy, J. K. Kreutz, Assistant, for defendant-appellant.

*En Banc.*

MR. JUSTICE HODGES delivered the opinion of the Court.

Since 1911, when a system of permanent registration for the electorate was inaugurated in Colorado, there has been a provision in our law which requires that registration books be purged of those electors who fail to vote at a preceding biennial general election. C.R.S. 1963, 49-4-21 is the current statute. In 1967, the legislature added to this statute a subsection which provides for notification to the purged electors that their names have been removed from the registration books. 1967 Perm. Supp., C.R.S. 1963, 49-4-21(5). ·

The appellees who were registered electors but did not vote at the general election on November 7, 1972, brought an action in the trial court for a judgment declaring that the above referred to "purging statute" is unconstitutional, and therefore, their names should not be removed from the registration book. The complaint also requested that a preliminary injunction be entered ordering that the purge be enjoined pending the trial court's determination. The appellees also brought the action on behalf of all registered electors who failed to vote at this general election.

The trial court permanently enjoined the purge and entered a judgment declaring that the purging statute is unconstitutional. From this judgment, the appellant Secretary of State appeals to this court.

We reverse the judgment of the trial court and hold that the purging statute as amended ·in 1967 by the addition of the provision for notification to the purged electors is constitutional. The 1967 notification provision is interpreted to mandate the mailing of notification to purged electors.

The several arguments that the statute is unconstitutional

made by the appellees at the trial court level were accepted and adopted by the trial court. The same arguments are presented in this appeal and are separately discussed herein.

I.

It is contended by the appellees that the purging statute is an unconstitutional attempt to augment the qualifications of electors as defined in Art. VII, § 1 of the Constitution of Colorado. The basic qualifications to be a voter pertain to citizenship, age and residence. All electors who possess these qualifications "shall be qualified to vote at all elections." The appellees argue that since a purged voter must again register before he can vote at future elections, the purging statute has the effect of unlawfully adding this act of registration as a qualification to vote. This contention is without merit.

Registering to vote does not come within the ambit of a constitutional qualification to vote. In *Benson v. Gillespie,* 62 Colo. 206, 161 P. 295 (1916), it was held that those laws requiring registration do not limit the right of suffrage or add to the constitutional qualifications of voters. It was also held therein that the laws requiring registration merely prescribe a procedure by which frauds may be prevented and mistakes avoided on the day of election. More recently, in *Colorado Project-Common Cause v. Anderson,* 178 Colo. 1, 495 P.2d 220 (1972), this court quoted with approval from *Benson* "that registration is not a qualification but a mechanical adjunct to the election process which enables election officials to determine that the prospective voter has the qualification to vote on election day." It is our view that whether initial registration, or registration after purging is involved, it is not a qualification to vote. It is merely an administrative process designed to facilitate rather than complicate participation in the election process.

We hold that re-registration after purging is exclusively an administrative adjunct which is necessary in order to provide for the purity of elections and to guard against abuses. Article VII, § 11 of the Constitution of Colorado requires the general assembly to "pass laws to secure the purity of elections, and guard against abuses of the elective

franchise." Under the authority of this mandate, the general assembly has enacted C.R.S. 1963, 49-4-1 *et seq.*, which is part of the election code of Colorado. This article provides for registration procedures which include the purging as described in C.R.S. 1963, 49-4-21(1)(2)(3) and as amended in 1967 by the addition of Subsection 5. 1967 Perm. Supp., C.R.S. 1963, 49-4-21(5).

## II.

■ The appellees urge us to hold as did the trial court that the purging statute violates the equal protection clause of the Fourteenth Amendment to the Constitution of the United States. They argue that the purging procedure results in an invidious discrimination between qualified registered electors who exercise their right to vote in general elections and qualified registered electors who do not vote. It is the appellees' view that this latter class of electors is unduly impeded in exercising their future right to vote because they must re-register. This argument is unacceptable. This impediment or burden which appellees say is so heavy, is not, in our view, more than minimal and incidental.

The appellees also premise their argument upon the view that in some way the purging statute is a bar to their right to vote. They rely quite heavily upon *Dunn v. Blumstein*, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972) and *Jarmel v. Putnam*, 179 Colo. 215, 499 P.2d 603 (1972) as authority for the proposition that the purging statute is unconstitutional. The long line of cases which culminate with *Dunn* and *Jarmel* do not constitute valid authority upon which the purging statute may be struck down as unconstitutional. In each of those cases, the state totally denied to a particular class of residents the right to vote and there was no way in which the members of that class could have made themselves eligible to vote under the provisions of law which were declared unconstitutional in those cases. In *Dunn*, for example, the state of Tennessee totally disenfranchised newly arrived residents, *i.e.*, those who have been residents of the state less than a year or residents of the county less than

three months before the election.

Appellees suggest that the following cases afford to this court ample authority to invalidate the purging statute as unconstitutional. *Carrington v. Rash,* 380 U.S. 89, 85 S.Ct. 775, 13 L.Ed.2d 675 (1965); *Kramer v. Union Free School District No. 15,* 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969); *Cipriano v. City of Houma,* 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969); *Evans v. Cornman,* 398 U.S. 419, 90 S.Ct. 1752, 26 L.Ed.2d 370 (1970); and *City of Phoenix v. Kolodziejski,* 399 U.S. 204, 90 S.Ct. 1990, 26 L.Ed.2d 523 (1970). Like *Dunn* and *Jarmel,* all these cases involved statutory provisions which denied to certain classes of citizens their fundamental right to vote, and as previously indicated, such cases do not deal with the issue of this case. Here, the qualified electors whose names were purged from the registration books, were in no way barred from voting. To vote, they are merely required to re-register. In the inapposite cases cited above, the class of persons involved were residents and citizens who by virtue of the challenged law, were denied their fundamental right to vote at a forthcoming election.

In *Williams v. Osser,* 350 F. Supp. 646 (1972), a Pennsylvania purging statute was challenged. This statute provided for removal from the voter registration lists of persons who had not voted in any election or primary during the previous two years. That statute also required notice to the purged elector, which notice is similar to that provided in the statute here under attack. The Pennsylvania statute was upheld. The court therein stated, in effect, that the purging related to a legitimate state interest to prevent fraudulent voting which outweighs the minimal burden placed upon electors to become registered again. We agree with the rationale of this case. On the other hand, we have studied the opinion in *Michigan State UAW Com. Action Prog. Coun. v. Austin,* 387 Mich. 506, 198 N.W.2d 385 (1972) wherein the Supreme Court of Michigan declared as unconstitutional a purging statute. We reject its rationale but note with interest the vigorous dissents.

### III.

We disagree with the appellees' contention that the requirements of due process of law as set forth in Article II, Section 25 of the Constitution of Colorado and in the Fourteenth Amendment to the Constitution of the United States are violated by the provisions of the purging statute as it applies to persons whose names have been removed from the registration books.

We acclaim the statement in the appellees' brief that the fundamental elements of liberty, including the right of every citizen to vote, has this constitutional protection. We fail, however, to recognize where this statement fits into any argument in support of the contention that the appellees were not afforded due process when they failed to vote and thus, caused the purging statute to be operative in removing their names from the registration books.

At most, constitutional due process requires that upon purging a name from the registration book, a notification of that fact is sent to that person at the address shown on the registration book. If that person is still living, and has not moved to another address, he thereupon has the minimal burden of re-registering to be able to vote at future elections. *Williams v. Osser, supra.* We believe it to be self evident that any person who is cognizant of the privileges and responsibilities of citizenship will not consider the act of re-registering any burden.

Any person who does not re-register may be presumed to be deceased, to have moved and registered at a new address, or to have no desire to vote at a forthcoming election. Thus, the election list becomes more authentic and is not as susceptible to fraudulent voting practices or other abuses of the franchise. This is the legitimate state interest involved in the purging procedure and in our view, it far outweighs the light burden of re-registering. *See Rosario v. Rockefeller,* 410 U.S. 752, 93 S.Ct. 1245, 36 L.Ed.2d 1 (1973) where it was held that a compelling state interest was involved in provisions of law relating to the prevention of "party raiding" and that since these laws impinged only

minimally upon the fundamental right to vote, they were declared valid.

The notification provision of the purging statute is set forth in 1967 Perm. Supp., C.R.S. 1963, 49-4-21(5) as follows:

"Upon the purging of the names of registered electors who failed to vote in the preceding general election, the county clerk *may* mail postal cards to all such purged electors informing them that their names have been purged from the registration books of the county clerk for failure to vote at such general election." (Emphasis added.)

We hold that the word "may" in the above provision must be interpreted to mean "shall." As so interpreted, the purging statute stands above any successful challenge on the due process ground because it mandates that notice be sent to those whose names are purged from the registration books for failure to vote at the previous general election. We note from the stipulation of facts in this case, the county clerks and election commissions, who represent a large majority of the voters, deemed this to be a mandatory requirement and sent the notice provided in this notification provision.

It is elementary that when a statute may be interpreted in two ways, the way which renders it constitutional must be adopted. In *Harless v. Carter,* 42 Cal. 2d 352, 267 P.2d 4 (1954), it was held that words permissive in form when a public duty is involved, are considered as mandatory, and where persons or the public have an interest in having an act done by a public body, the word "may" in a statute means "must." Also, it has been held that the word "may" when used in a statute to denote choice of procedure not affecting it or any party of interest is not mandatory, but generally construed to mean "must" where a substantial interest is affected. *In Re Vosburg's Estate,* 167 Misc. 611, 5 N.Y.S.2d 804 (1938).

## IV.

Because of the trial court's declaration that the purging statute is unconstitutional, it necessarily had to also declare as unconstitutional and therefore invalid the last nine

underlined words of C.R.S. 1963, 49-5-4 as follows:

"*Loss of party affiliation.* The declaration of party affiliation shall remain as to each registered elector making same until changed or withdrawn; provided, such elector shall lose his party affiliation by moving from the county in which he resided at the time the declaration or change was made, unless he transfers his affiliation as provided in section 49-5-5, *or by failure to vote at any general election.*"

Because we herein uphold the constitutionality of the purging statute, we also uphold the constitutionality of that part of C.R.S. 1963, 49-5-4 as described above.

\* \* \*

The trial court entered a judgment and decree that the preliminary injunction entered previously be made permanent so that no qualified, registered elector shall be purged as the result of his failure to have voted in the November 7, 1972 general election.

That judgment of the trial court is reversed and the permanent injunction is ordered vacated.

MR. JUSTICE ERICKSON does not participate.