PUBLISH

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 30 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

DOUGLAS CAMPBELL, KEVIN
WILKERSON, RICHARD ADAMS,
JOSEPH M. BUERSMEYER, KAREN
ROBERTS, AND NORMA-JEAN
NICOLE LINGEN,

        Plaintiffs-Appellees,

v.

DONNETTA DAVIDSON, in her
official capacity as Secretary of State
for the State of Colorado,

        Defendant-Appellant.

No. 99-1257

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. NO. 98-M-1929)**

---

Elizabeth A. Weishaupl (Ken Salazar, Attorney General, with her on the briefs),
First Assistant Attorney General for the State of Colorado, Denver, Colorado, for
the Appellant.

Paul Grant, Englewood, Colorado, for the Appellees.

---

Before **HENRY** , and **BRISCOE** , Circuit Judges, and   **ALLEY** , District Judge.  *

---

    * The Honorable Wayne E. Alley, Senior District Judge, United States
District Court for the Western District of Oklahoma sitting by designation.

**HENRY** , Circuit Judge.

The Secretary of State for the State of Colorado ("State") appeals the district court's grant of summary judgment which held that the State's imposition of additional qualifications on a person seeking federal office violated Article I, § 2, cl. 2 of the United States Constitution. We have jurisdiction under 28 U.S.C. § 1291 and, for the reasons set forth below, we affirm.

## I. BACKGROUND

The State denied Douglas Campbell's nomination by petition as a candidate for election to the United States House of Representatives for the November 3, 1998 election. Mr. Campbell sought a preliminary injunction against the State in the court below, which was denied. The State then moved to dismiss, and the district court transformed the pleadings into cross-motions for summary judgment under Fed. R. Civ. P. 56(c).

The material facts are not in dispute: In July 1998, Mr. Campbell, sought access to the ballot as an unaffiliated candidate for the United States House of Representatives for the Second Congressional District of Colorado through nomination by petition. Under Colorado law, "[n]o person is eligible to be a designee or candidate for office unless that person fully meets the qualifications

of that office as stated in the constitution and statutes of this state on or before the date the term of that office begins." Colo. Rev. Stat. Ann. § 1-4-501(1).

Mr. Campbell was a resident of Arvada, Colorado, and at the time he submitted his nominating petition to the State, he was not a registered voter. In August 1998, the State informed Mr. Campbell that his name would not appear on the November 1998 ballot because he was not registered to vote in Colorado as required under Colo. Rev. Stat. Ann. § 1-4-802(1)(g). Specifically, § 1-4-802(1)(g) states:

> No person shall be placed in nomination by petition unless the person is an eligible elector of the political subdivision or district in which the officer is to be elected and unless the person was registered as unaffiliated, as shown on the books of the county clerk and recorder, for at least twelve months prior to the last date the petition may be filed.

The district court found that this provision violated the Qualifications Clause of the United States Constitution, which provides:

> No person shall be a Representative who shall not have attained to the Age of twenty five Years, and been seven Years a Citizen of the United States, and who shall not, when elected, be an Inhabitant of that State in which he shall be chosen.

U.S. Const., art. I, § 2 cl. 2. [1] Specifically, the district court stated that the provision

---

[1] Other sections of the Constitution place limitations upon members of Congress. See U.S. Const. Art. I, § 6, cl. 2 (prohibition against members of Congress from holding other federal office); Amend. XIV, § 3 (disqualification from congressional office of persons who, having previously sworn to support the Constitution, subsequently engaged in insurrection, rebellion, or aid to the

(continued...)

-3-

imposes three restrictions on persons seeking election to the House of Representatives that are not found in the United States Constitution. Each is a contradiction of the constitutional language. First, the nominees must reside in the particular district in which they seek election; the Constitution permits residence anywhere in the state of election. Second, voter registration in Colorado requires residency in the state for at least thirty days. The Constitution requires state residency only "when elected." Third, Colorado prohibits voter registration by convicted felons serving sentences or on parole. See C.R.S. § 1-2-103(4). The Constitution contains no such restriction on election to Congress.

App. at 115-16. The district court entered summary judgment in favor of Mr. Campbell. This appeal timely followed.

## II. DISCUSSION

### A. The Registration Requirement

The State emphasizes that the statute's registration requirement is a valid exercise of the State's power because it serves an important regulatory interest. Specifically, the State (1) likens § 1-4-802(1)(g) to the California statute at issue in Storer v. Brown, 415 U.S. 724 (1974); (2) distinguishes § 1-4-802(1)(g) from an impermissible substantive qualification; (3) characterizes the statute's requirement to register as procedural in nature; (4) suggests the statute serves to

---

[1](...continued)
enemy).

-4-

inform the electorate at large; and (5) claims the statute encourages a representative democracy. We shall consider each contention in turn.

1. The Elections Clause

The State contends that § 1-4-802(1)(g) is not an additional qualification but rather an enhancement to the State's authority to regulate its ballot under the Elections Clause of the United States Constitution. The Elections Clause provides that the "Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof . . . ." U.S. Const. art. I, § 4, cl.1. That the States maintain a "discretionary power over elections," a power restricted to the procedural regulation of the times, places and manner of elections, is not in dispute. The Federalist No. 59; see also The Federalist No. 60 (examining the potential "danger" of "confiding the ultimate right of regulating its own elections to the Union itself"). See, e.g., Libertarian Party of Illinois v. Rednour, 108 F.3d 768, 777 (7th Cir. 1997) (holding that Illinois ballot access petitioning requirements were "entirely procedural").

The Supreme Court has recognized that "States have a legitimate interest in regulating the number of candidates on the ballot." Illinois State Bd. of Elections v. Socialist Workers Party, 440 U.S. 173, 184-85 (1979). "The Elections Clause

-5-

gives States authority to enact the numerous requirements as to procedure and safeguards which experience shows are necessary in order to enforce the fundamental right involved," without "the abridgment of fundamental rights." U.S. Term Limits, Inc. v. Thornton, 514 U.S. 779, 834 (1995) (striking down Arkansas term limits for election to Congress) (internal quotation marks and citations omitted).

The State suggests that the district court should have applied a more flexible approach, weighing the "'character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments . . .' against 'the precise interests put forward by the State as justifications for the burden imposed by its rule.'" Burdick v. Takushi, 504 U.S. 428, 434 (1992) (quoting Anderson v. Celebrezze, 460 U.S. 780, 789 (1983)). Under Burdick, because Mr. Campbell does not allege that § 1-4-802(1)(g) is discriminatory, the State need only show an important regulatory interest. See id. The State purports that regulation of the ballot satisfies this interest.

### a. Regulatory Interest

In support of its regulatory interest, the State relies heavily on Storer v. Brown, 415 U.S. 724 (1974), in which the Supreme Court upheld California's "sore loser" ballot restriction. That provision limited independent candidate

access to those candidates who were not affiliated at any time in the preceding one year with a qualified political party, thus prohibiting a candidate from losing a party primary and running as an independent. The Court stated that the "non-affiliation requirement no more establishes an additional requirement for the office of Representative than the requirement that the candidate win the primary to secure a place on the general ballot or otherwise demonstrate substantial community support." Id. at 746 n.16. The State contends that Storer's disaffiliation requirement is analogous to Colorado's requirement of registration as a disaffiliated candidate and should therefore be upheld. Mr. Campbell distinguishes Storer's non-affiliation requirement as a "general state policy aimed at maintaining the integrity of the various routes to the ballot." Id. at 733.

Applying the flexible standard of Burdick –weighing the character and magnitude of the asserted injury against the State's proffered regulatory interests–we agree that the regulation involved in Storer is distinguishable from the registration requirement in the case at hand. In Storer, the Court recognized that the non-affiliation requirement served to prevent a losing candidate "from continuing the struggle and to limit the names on the ballot to those who have won the primaries and those independents who have properly qualified." Id. at 735. It required the candidate to demonstrate a significant amount of public support before she gained access to the ballot, thereby "winnow[ing] out and

finally reject[ing] all but the chosen candidates." Id. It also "further[ed] the State's interests in the stability of its political system," id. at 736, without discriminating against independents. See id. at 733. The "sore loser" disaffiliation requirement was therefore a valid exercise of California's power under Article 1, § 4. See id. at 736.

In contrast, here, Colorado's registration requirement does little to "winnow out" chosen candidates, but rather completely *excludes* those who have not registered. In Storer, disaffiliation did not require a candidate to register, but only to "be clear of political party affiliations for a year before the primary." Id. at 733. In fact, "the [independent] party candidate must *not have been registered* with another party for a year before he files his declaration." Id. at 733-34 (emphasis supplied). The Colorado registration requirement does not advance ballot housekeeping by limiting access to the ballot based on electoral support; instead, it limits access based on other exclusionary measures. The State's reliance upon the Elections Clause is misplaced. See Thornton, 514 U.S. at 822 (stating that "[p]ermitting individual States to formulate diverse qualification for their representatives" far exceeds "the *national character* that the Framers envisioned and sought to ensure") (emphasis supplied); see also The Federalist No. 57 ("No qualification of wealth, of birth, of religious faith, or of civil profession is permitted to fetter the judgment or disappoint the inclination of the

-8-

people.").  We do not see the State's important regulatory interest in this provision.


    2. Impermissible Qualifications

    Rather than analyze the registration requirement as a regulatory interest of the State, the district court focused on the requirement's violation of the Qualifications Clause.  The evenhanded procedural regulations permissible under the Elections Clause are not at odds with the purposes of the Qualifications Clause.  The Qualifications Clause reinforces the "the true principle of a republic . . that the people should choose whom they please to govern them." 2    Debates on the Federal Constitution   (J. Elliot ed., 1876), quoted in    Powell v. McCormack  , 395 U.S. 486, 540-41 (1969);    see also  Thornton , 514 U.S. at 820-21 (recognizing that "the right to choose representatives belongs not to the States, but to the people").  Consequently, the qualifications provision "is not alterable by the State governments."   The Federalist No. 52   .  Article I provides "reasonable limitations," that allow "the door of this part of the federal government [to be] open to merit of every description, whether native or adoptive, whether young or old, and without regard to poverty or wealth, or to any particular profession or religious faith."   Id.; see also  Thornton , 514 U.S. at 832-33 (stating the purpose of the Elections Clause is to create "procedural regulations," not to give the States

"license to exclude classes of candidates from federal office"); Powell, 395 U.S. at 550 (holding that attempted unseating of Congressman Powell, who had been convicted of mishandling congressional funds, was an impermissible imposition of additional qualifications).

The State argues that the district court erred in concluding that § 1-4-802(1)(g) is an impermissible qualification. The State proffers the Supreme Court's decision in Thornton as evidence of § 1-4-802(1)(g)'s "'evenhanded restrictions'" meant only to "'protect the integrity and reliability of the electoral process'" pursuant to the Elections Clause. Thornton, 514 U.S. at 834 (quoting Anderson, 460 U.S. at 788, n. 9).

The State cites the following language from Thornton for support:

> The provisions at issue in Storer and our other Elections Clause cases were thus constitutional because they regulated election procedures and did not even arguably impose any substantive qualification rendering a class of potential candidates ineligible for ballot position. . . . Our cases upholding state regulations of election procedures thus provide little support for the contention that a state-imposed ballot access restriction is constitutional when it is undertaken for the *twin goals of disadvantaging a particular class of candidates and evading the dictates of the Qualifications Clauses.*

514 U.S. at 835 (emphasis supplied). But, unlike the California statute before the Storer Court, § 1-4-802(1)(g) fosters the twin goals discouraged in Thornton: It disadvantages a particular class of candidates and evades the dictates of the

Qualifications Clause. First, by preventing those who are ineligible to register to vote ( e.g., persons serving criminal sentences or on parole, see Colo. Rev. Stat. § 1-2-103(4), and non-residents, see id. § 1-2-101(1)(b)), from becoming a candidate under the guise of ballot regulation, and second by precluding all non-registering persons from candidacy.

Tellingly, additional language from Thornton supports the district court's conclusion that § 1-4-802(1)(g) imposes an impermissible qualification:

> [The provisions at issue in Storer] served the state interest in protecting the integrity and regularity of the election process, an interest independent of any attempt to evade the constitutional prohibition against the imposition of additional qualifications for service in Congress. And they did not involve measures that exclude candidates from the ballot without reference to the candidates' support in the electoral process.

Thornton, 514 U.S. at 835 (emphasis supplied). The State has not demonstrated that § 1-4-802(1)(g) protects the integrity or regularity of the election process and, as demonstrated above, the statute does involve measures that unjustly exclude various segments of the population from the ballot. We hold that the statute imposes additional qualifications to the exclusive qualifications set forth in the Constitution, and hence is impermissible.

3. Procedural Requirement

-11-

The State, relying heavily on voter registration cases, also attempts to characterize voter registration as a simple procedure, or mechanical adjunct, that is authorized under Thornton. Id. at 832 ("The Framers intended the Elections Clause to grant States authority to create procedural regulations. . . . "). In Colorado Project-Common Cause v. Anderson, 495 P.2d 220, 222 (Colo. 1972) (en banc), the Colorado Supreme Court held that the act of registration is "not a qualification but a mechanical adjunct to the elective process" for the elector. See also Duprey v. Anderson, 518 P.2d 807, 808 (Colo. 1974) (en banc) ("Registering to vote does not come within the ambit of a constitutional qualification to vote."). The State then concludes that if a voter's registration is a "mechanical adjunct" then a candidate's act of registration is also a "mechanical adjunct."

Mr. Campbell relies upon Dillon v. Fiorina, 340 F. Supp. 729 (D.N.M. 1972) (per curiam) to counter the State's argument. In Dillon, the district court struck down a New Mexico statute that prevented any person from becoming a candidate for United States Senator "unless he ha[d] been affiliated with that party for at least one year prior to the filing date for the primary election." Id. at 730. The court determined that, because the statute in effect required residency for two years within New Mexico, it added an "impermissible requirement" to the qualifications for candidacy. Id. at 731; see also State ex rel. Chavez v. Evans,

-12-

446 P.2d 445, 448 (N.M. 1968) (holding that provision requiring candidate to be a resident and qualified elector "unconstitutionally adds additional qualifications"); Hellmann v. Collier, 141 A.2d 908, 912 (Md. 1958) (per curiam) (invalidating requirement that a congressional representative must reside in the district from which he is elected); see also Application of Ferguson, 294 N.Y.S.2d 174, 175-76 (1968) (holding that state may not exclude convicted felon as a candidate for the United States Senate); Danielson v. Fitzsimmons, 44 N.W.2d 484, 486 (Minn. 1950) (holding that state cannot render person convicted of conspiracy to overthrow the government ineligible for Congress). [2]

We agree with Mr. Campbell's assertions. We recognize that an administrative process designed to facilitate participation in the election process does not impinge on the qualifications of a voter, but we agree with the district court that the registration process for a candidate adds to a candidate's qualifications.

---

[2] Although the Constitution, perhaps recognizing that States run the election process, implicitly authorizes states to preclude felons from voting in federal (or state) elections, see U.S. Const. amend. XIV, which allows States to deny the right to vote to those who have "participat[ed] in rebellion or other crime", the Qualifications Clause prohibits this limitation from restricting ballot access to federal office. See Libertarian Party of Illinois, 108 F.3d at 777 (noting that ballot access petition requirements were "procedural in nature and d[id] not add substantive qualifications, [and did] not violate the Qualifications Clause.") Perhaps some of the Framers remembered troubles they or their friends had with the law when under British sovereignty and preferred that the voters rather than one's former status decide federal officeholding.

As the district court highlighted, an electoral requirement presupposes residency and, in turn, excludes groups from participating in the candidacy process. The authority to "create procedural regulations" as derived from the Elections Clause did "not . . . provide States with license to exclude classes of candidates from federal office." Thornton, 514 U.S. at 832-33. We agree with the district court that the requirement of registration is a substantive requirement that impermissibly imposes qualifications upon would-be candidates.

4. Registration as a Tool to Educate the Electorate

The State also suggests that the registration process under § 1-4-802(1)(g) is merely an education process for the voters and election officials to conclude that the candidate meets the requirements of Article I, § 2, cl. 2, that is, having attained twenty-five years in age, having been a United States citizen for seven years and being an inhabitant of the State when elected. Mr. Campbell proposes utilizing an affidavit to achieve the same ends. The State's argument is not persuasive. There is no question that the State can insure that its candidates meet the minimum requirements of the Qualifications Clause and in turn represent this fact to its electors through affidavits or a variety of other means.

5. Encouragement of a Representative Democracy

Finally, the State suggests that the simple registration requirement advances the State's interest in maintaining an active representative democracy, one that encourages participation in the electoral process: "A person who, for one reason or another, chooses not to be a part of th[e] electorate [by failing to register] cannot logically represent the whole [i.e. be a candidate]." Aplt's Br. at 17-18. We hold that, even if the State is correct in arguing that a candidate who is registered to vote is somehow "better qualified" than a candidate who is not, this goal cannot be advanced by imposing unconstitutional requirements upon its candidates.

## III. CONCLUSION

Thus we AFFIRM the district court's order granting summary judgment in favor of Mr. Campbell and its decision that Colo. Rev. Stat. Ann. § 1-4-802(1)(g) blocks the opening of "the door of this part of the federal government" by unconstitutionally restricting access to federal ballots.      The Federalist No. 52  . The Framers' plan, as noted earlier, allowed voters to pick among a variety of candidates for national offices. The Colorado provision fails, unconstitutionally, to give vent to their choice.