United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 3, 2006**

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 06-50812

TEXAS DEMOCRATIC PARTY; BOYD L RICHIE, in his capacity as
Chairman of the Texas Democratic Party,

Plaintiffs - Appellees,

v.

TINA J BENKISER, in her capacity as Chairwoman of the
Republican Party of Texas,

Defendant - Appellant.

Appeal from the United States District Court
for the Western District of Texas

Before BENAVIDES, DENNIS, and CLEMENT, Circuit Judges.

BENAVIDES, Circuit Judge:

The chair of the Republican Party of Texas ("RPT") declared Representative Tom DeLay ineligible for election to the 22nd Congressional District of Texas. After the RPT declared DeLay ineligible, but before the Secretary of State removed his name from the ballot, the Texas Democratic Party ("TDP") sought an injunction to prevent the removal of his name and to prevent the RPT from replacing DeLay with a new candidate. The district court granted the injunction, holding that the RPT, through its leadership, created an unconstitutional pre-election residency requirement. We

AFFIRM on the constitutional grounds enumerated by the district court and also AFFIRM on the alternative state law ground that the declaration violated the Texas Election Code.

## I. FACTS AND PROCEDURAL BACKGROUND

On June 7, 2006, Defendant Tina J. Benkiser, the chairwoman of the RPT, declared DeLay ineligible for reelection as the United States Representative for Texas's 22nd District. She acted under the Texas Election Code provision that allows a party chair to declare a candidate ineligible. TEX. ELEC. CODE ANN. § 145.003(f) (Vernon 2003). DeLay had represented the 22nd District since 1984 and had won the Republican primary in March 2006. DeLay, however, announced on April 3, 2006, that he would resign from Congress and not seek reelection. Benkiser declared DeLay ineligible after receiving a letter from him advising her that he had moved to Virginia.[1] The letter, dated May 30, 2006, included copies of DeLay's Virginia driver's license, Virginia voter registration, and employment withholding form reflecting Virginia as his residence. It is undisputed that Benkiser intended to replace DeLay on the ballot with a new candidate chosen by the RPT.

The TDP filed this suit in Texas state court on June 8, 2006, seeking declaratory and injunctive relief. The RPT removed the case to federal court, where on June 26, 2006, the court held a

---

[1]On May 26, 2006, Benkiser had received a draft of the same letter for her review.

2

hearing on the merits.  After receiving post-hearing briefs from both parties, the district court held that Benkiser's declaration of DeLay's ineligibility violated the Qualifications Clause of the Constitution.  The court granted a permanent injunction that barred Benkiser from declaring DeLay ineligible and certifying to the Texas Secretary of State any candidate for the 22nd District other than DeLay.  The court also declared that DeLay is "not ineligible" to be the Republican Party nominee and voided Benkiser's previous declaration.  Finally, it prohibited the Secretary of State from removing DeLay's name from the ballot for the general election unless DeLay withdraws.  The RPT appeals, arguing that the TDP lacks standing and that the district court erred in granting the injunction against Benkiser.

## II.  STANDARD OF REVIEW

The district court's interpretation of the Qualifications Clause is reviewed *de novo*.  *See United States v. Osborne*, 68 F.3d 94, 98 (5th Cir. 1995).  Other legal issues, including questions of state statutory interpretation, also are reviewed *de novo*.  *See Stephens v. Witco Corp.*, 198 F.3d 539, 541 (5th Cir. 1999).  We accept the district court's findings of fact unless clearly erroneous.  *Hughes Training Inc. v. Cook*, 254 F.3d 588, 592 (5th Cir. 2001).  Its decision to grant a permanent injunction after its decision on the merits is reviewed for abuse of discretion. *McClure v. Ashcroft*, 335 F.3d 404, 408 (5th Cir. 2003).

3

### III. DISCUSSION

### A. The TDP Has Standing

Before addressing the merits of this appeal, we must determine whether the TDP has standing to sue. To satisfy the standing requirement, a plaintiff must show: (1) an injury in fact; (2) that is traceable to the defendant's challenged conduct; and (3) that is likely to be redressed by a favorable decision in the district court. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992); *McCall v. Dretke*, 390 F.3d 358, 361 (5th Cir. 2004). We hold that the TDP has both direct and associational standing.

### 1. The TDP Has Direct Standing

First, the TDP has direct standing because DeLay's replacement would cause it economic loss. The district court found that the TDP would suffer an injury in fact because it "would need to raise and expend additional funds and resources to prepare a new and different campaign in a short time frame." *Tex. Democratic Party v. Benkiser*, __ F. Supp. 2d __, 2006 WL 1851295, *2 (W.D. Tex. July 6, 2006) (hereinafter "Dist. Ct. Op."). This finding of financial injury is not clearly erroneous because it is supported by testimony in the record. In addition, economic injury is a quintessential injury upon which to base standing. *E.g.*, *Barlow v. Collins*, 397 U.S. 159, 163–64 (1970).[2]

---

[2]*See also Taxation with Representation of Washington v. Regan*, 676 F.2d 715, 723 (D.C. Cir. 1982) ("[I]t is clearly evident that [the plaintiff] will be harmed if its contributors

4

The RPT argues, however, that the TDP should be expected to absorb any additional costs that a replacement candidate would cause in order to promote the state's interest in voter choice. In addition, the RPT points out that its own candidate will have to put together a campaign in a short period of time. These fairness arguments have no place in the standing analysis. Indeed, the RPT's briefs confuse the issue of whether the TDP has shown an injury in fact with the different question of whether the TDP has a cause of action. The cases the RPT cites to support its fairness arguments were themselves decided on the merits.[3] In short, regardless of the equities in this case, injury to the TDP's proverbial pocketbook is an injury in fact for standing purposes.

Turning to causation and redressability, the RPT's declaration of ineligibility and replacement of DeLay with a different candidate would be a but-for cause of the TDP having to expend additional money on a new campaign strategy. And the district

---

cease giving it money."), *rev'd on other grounds*, 461 U.S. 540 (1983); *Buckley v. Valeo*, 519 F.2d 821, 871 n.130 (D.C. Cir. 1975) (holding that a political party had standing because "disclosure [of contributors' names] would cause loss of contributions from those who currently insist that their gifts remain confidential"), *aff'd in part*, *rev'd in part on other grounds*, 424 U.S. 1 (1976).

[3]*See California Democratic Party v. Jones*, 530 U.S. 567 (2000); *Anderson v. Celebrezze*, 460 U.S. 780 (1983); *Democratic Party of the United States v. Wisconsin ex rel. La Follette*, 450 U.S. 107 (1981).

court's injunction prevents the declaration of ineligibility and replacement, thereby redressing the TDP's injury.

A second basis for the TDP's direct standing is harm to its election prospects. The TDP's witnesses testified below that if the RPT were permitted to replace DeLay with a more viable candidate, then its congressional candidate's chances of victory would be reduced. In addition, according to the TDP, "down-ballot" Democratic candidates, like county commissioners and judges, would suffer due to the change's effect on voter turnout and volunteer efforts. The RPT contends that these harms do not amount to an injury in fact. Voluminous persuasive authority shows otherwise.[4] We find these cases persuasive because a political party's interest in a candidate's success is not merely an ideological interest.

---

[4]*See Smith v. Boyle*, 144 F.3d 1060, 1061–63 (7th Cir. 1998) (Illinois Republicans had standing to challenge state voting rules that disadvantaged Republican candidates); *Schulz v. Williams*, 44 F.3d 48, 53 (2d Cir. 1994) (Conservative Party official had standing to challenge opposing candidate's position on the ballot where the opponent "could siphon votes from the Conservative Party" candidate); *Owen v. Mulligan*, 640 F.2d 1130, 1132–33 (9th Cir. 1981) (holding that "potential loss of an election" was an injury in fact sufficient to give Republican party official standing); *Democratic Party of the United States v. Nat'l Conservative Political Action Comm.*, 578 F. Supp. 797, 810 (E.D. Pa. 1983) (three-judge panel) (holding that Democratic Party had Article III standing because challenged action "reduce[d] the likelihood of its nominee's victory"), *aff'd in part and rev'd in part on other grounds sub nom. Fed. Election Comm'n v. Nat'l Conservative Political Action Comm.*, 470 U.S. 480, 489–90 (1985); *Bay County Democratic Party v. Land*, 347 F. Supp. 2d 404, 423 (E.D. Mich. 2004) (holding that party had standing to challenge voting rules that could "diminish [its] political power").

Political victory accedes power to the winning party, enabling it to better direct the machinery of government toward the party's interests. *See Storer v. Brown*, 415 U.S. 724, 745 (1974). While power may be less tangible than money, threatened loss of that power is still a concrete and particularized injury sufficient for standing purposes.

Having found injury in fact in the TDP's threatened loss of political power, we also find causation and redressability. The injury threatened to the TDP's electoral prospects is fairly traceable to Delay's replacement and likely would be redressed by a favorable decision, which would preclude a Republican replacement candidate.

## 2. The TDP Has Associational Standing

In addition, the TDP has associational standing on behalf of its candidate.[5] Associational standing is a three-part test: (1) the association's members would independently meet the Article III standing requirements; (2) the interests the association seeks

---

[5]The TDP contends it also has associational standing to sue on behalf of (1) the party's noncandidate members and (2) Democratic voters more broadly. Out-of-circuit authority supports at least the former contention. *See Gable v. Patton*, 142 F.3d 940, 946 (6th Cir. 1998); *Smith v. Boyle*, 959 F. Supp. 982, 985–86 (C.D. Ill. 1997), *aff'd as modified*, 144 F.3d 1060 (7th Cir. 1998); *but cf., e.g.*, *Gottlieb v. Fed. Election Comm'n*, 143 F.3d 618, 621–22 (D.C. Cir. 1998) (holding that voters' interest in influencing the political process was too speculative a ground upon which to base standing). We need not finally resolve whether the TDP could sue on behalf of Democratic voters or noncandidate party members because we find that the TDP has standing on the grounds addressed.

to protect are germane to the purpose of the organization; and (3) neither the claim asserted nor the relief requested requires participation of individual members. *See Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977).

Here, Nick Lampson, the Democratic party's candidate for DeLay's House seat, would have standing for similar reasons that the TDP has direct standing. The RPT's actions threaten his election prospects and campaign coffers. Persuasive authorities establish that such injuries are sufficient to give a candidate standing to protest the action causing the harm. *See Krislov v. Rednour*, 226 F.3d 851, 857 (7th Cir. 2000); *Fulani v. Hogsett*, 917 F.2d 1028, 1030 (7th Cir. 1990); *Fulani v. League of Women Voters Educ. Fund*, 882 F.2d 621, 626–27 (2d Cir. 1989). In short, the first element of associational standing is satisfied.

With respect to the second element of associational standing, the TDP undoubtedly seeks to protect its organizational interests. As the Supreme Court has noted, the goal of a political party is to gain control of government by getting its candidates elected. *See Storer*, 415 U.S. at 745.

As to *Hunt*'s third element, nothing requires the participation of Lampson himself. Lampson's interests are fully represented by the TDP; after the primary election, a candidate steps into the shoes of his party, and their interests are identical. As well, the type of relief sought, *i.e.*, an injunction, will inure to

8

Lampson's benefit. *See Int'l Union v. Brock*, 477 U.S. 274, 287–88 (1985). In sum, the TDP has standing to sue on Lampson's behalf under *Hunt*.

For the foregoing reasons, the TDP had standing to raise its claims before the district court.[6]

**B. Benkiser's Acts Effectively Created a Pre-Election Inhabitancy Requirement and so Violated the Constitution**

**1. Constitutional and Statutory Provisions at Issue**

The question before this Court centers on the Texas statute permitting a party officer to declare a candidate ineligible. TEX. ELEC. CODE ANN. § 145.003. An officer can do so if (1) a candidate's application for a place on the ballot indicates ineligibility or (2) "facts indicating that the candidate is ineligible are conclusively established by another public record." *Id.* at § 145.003(f).[7] If the public record establishes ineligibility, the officer "shall declare the candidate ineligible." *Id.* at

---

[6]We need not consider additional arguments raised by the TDP in support of its standing. We note, though, that Texas law provides that suits to challenge a declaration of ineligibility may be brought by that candidate's competitors. TEX. ELEC. CODE § 273.081 (providing a right of action to any "person who is being harmed or is in danger of being harmed by a violation or threatened violation of this code"); *see In re Jones*, 978 S.W.2d 648, 651 (Tex. App.–Amarillo 1998, orig. pet.) (candidate had standing to challenge opponent's eligibility); *Nixon v. Slagle*, 885 S.W. 2d 658 (Tex. App.–Tyler 1994, orig. pet.) (considering on the merits a Republican Party challenge to a Democratic Party declaration of ineligibility).

[7]It is undisputed that the present case concerns the second method for declaring a candidate ineligible.

§ 145.003(g). If the candidate is declared ineligible on or before the 74th day before the election, the candidate's name is removed from the ballot. *Id.* at § 145.035. The party can fill the vacancy with a replacement candidate if the new candidate is certified to the secretary of state by 5:00 pm of the 70th day before the election. *Id.* at § 145.036(a), § 145.037. In situations such as the one before this Court, a replacement candidate cannot appear on the ballot if the original candidate merely withdraws. *See id.* at § 145.036(b).

The district court held that the ineligibility statute as applied in the present case violates the Constitution's Qualifications Clause by creating a pre-election residency requirement.[8] *See* U.S. CONST. art. 1, § 2, cl. 2. The Qualifications Clause states:

> No person shall be a Representative who shall not have attained to the Age of twenty five Years, and been seven Years a Citizen of the United States, and who shall not,

---

[8]The district court did not explicitly state whether it held the statute facially unconstitutional or unconstitutional as applied. Much of its language, however, implies an as-applied analysis. *See* Dist. Ct. Op. at *8 ("[C]onstruing the Texas Election Code to permit such a declaration of ineligibility based on inhabitancy at this time would be an unconstitutional application of state law."). Given that the statute also governs the ineligibility of state candidacies, an as-applied holding is appropriate. *See Women's Medical Prof. Corp. v. Voinovich*, 130 F.3d 187, 193 (6th Cir. 1997) ("If a statute is unconstitutional as applied, the State may continue to enforce the statute in different circumstances where it is not unconstitutional, but if a statute is unconstitutional on its face, the State may not enforce the statute under any circumstances.").

10

when elected, be an Inhabitant of that State in which he
shall be chosen.

*Id.* The RPT argues that the statute is constitutional under the

Elections Clause because it merely acts as a procedural regulation.

*See id*. at art. 1, § 4, cl. 1. The Elections Clause states:

> The Times, Places and Manner of holding Elections for
> Senators and Representatives, shall be prescribed in each
> State by the Legislature thereof; but the Congress may at
> any time by Law make or alter such Regulations, except as
> to the Places of chusing Senators.

*Id.*

**2. Benkiser's Declaration Is Unconstitutional as Applied Under the Qualifications Clause**

As the parties agree, the Qualifications Clause is exclusive

and cannot be enlarged by the states.[9] *U.S. Term Limits, Inc. v.*

*Thornton*, 514 U.S. 779, 806 (1995) ("[T]he text and structure of

the Constitution, the relevant historical materials, and, most

importantly, the 'basic principles of our democratic system' all

demonstrate that the Qualifications Clauses were intended to

preclude the States from exercising any such power and to fix as

exclusive the qualifications in the Constitution."). The plain

language of the inhabitancy requirement of the Qualifications

Clause shows that a candidate for the House of Representatives must

---

[9]There is no dispute that when Benkiser applied the
ineligibility statute to DeLay she did so as a state actor. *See*
*Smith v. Allwright*, 321 U.S. 649, 663 (1944) (holding that in
conducting a primary, a Texas political party is "an agency of
the state").

11

only be an inhabitant of the state "when elected." U.S. CONST. art. 1, § 2, cl. 2.

Moreover, there is ample evidence suggesting that the Framers deliberately chose to use the "when elected" language. As explained by the district court, records from the constitutional convention show that the Framers debated whether to include lengthy inhabitancy requirements. 2 THE RECORDS OF THE FEDERAL CONVENTION OF 1787, at 217–19 (Max Farrand ed., 1911). Delegates considered seven-year, three-year, and one-year requirements and rejected all three. *Id.* The position is further buttressed by an 1808 case in which Congress considered the election of a Representative who moved to Maryland a mere two weeks before the election. CASES OF CONTESTED ELECTIONS IN CONGRESS 224 (M. Clarke & D. Hall eds. 1834) (discussing *Sundry Electors v. Key*, case XXVIII). Congress found that the Representative was qualified, given that he was an inhabitant of the state as of election day. *Id.* at 233.

When Benkiser reviewed the public records sent by DeLay and concluded that his residency in Virginia made him ineligible, she unconstitutionally created a pre-election inhabitancy requirement. The Qualifications Clause only requires inhabitancy when that candidate is elected. Given this language, Benkiser could not constitutionally find that DeLay was ineligible on June 7, the date

12

she made her decision.[10]  Therefore, her application of the ineligibility statute to DeLay was unconstitutional.[11]

Our conclusion conforms with the Texas principle that "[a]ny constitutional or statutory provision which restricts the right to hold office must be strictly construed against ineligibility." *Wentworth v. Meyer*, 839 S.W.2d 766, 767 (Tex. 1992).  In addition, it is supported by decisions in the Ninth and Tenth Circuits that struck down pre-election day residency requirements.  *Schaefer v. Townsend*, 215 F.3d 1031, 1039 (9th Cir. 2000); *Campbell v. Davidson*, 233 F.3d 1229, 1235 (10th Cir. 2000).  In *Schaefer*, relying on *U.S. Term Limits* and evidence of the Framers' intent, the Ninth Circuit held that a one-year pre-election residency requirement "violates the Constitution by handicapping the class of nonresident candidates who otherwise satisfy the Qualifications Clause."  215 F.3d at 1037.  The Tenth Circuit, in *Campbell*, struck down a Colorado law that, *inter alia*, required candidates to be

---

[10]Benkiser's testimony acknowledges this fact:

Q: [T]here's no way you can represent to this court where [DeLay's] going to live on November 7th?

A: I can't represent anything that's going to happen on November 7th.

[11]That DeLay may have no interest in remaining a candidate does not alter this constitutional analysis; a candidate's subjective interest, or lack thereof, in competing for elective office does not speak to whether the candidate is qualified to do so under the Constitution.

13

residents of the state for at least thirty days.  233 F.3d at 1231–35.  Like the Ninth Circuit, it relied on *U.S. Term Limits* and evidence of the Framers' intent.  *Id.* at 1233 (citing THE FEDERALIST NO. 52 (James Madison)).[12]

The RPT does not dispute that the Qualifications Clause requires inhabitancy on election day.  Instead, the RPT argues that such a determination can be made prospectively in a procedural manner allowed by the Elections Clause.

### 3.  The RPT's Arguments for Finding Benkiser's Declaration Constitutional Under the Elections Clause Fail

States, through the Elections Clause, exercise some regulatory authority over federal elections because "as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes."  *Storer*, 415 U.S. at 730.  This authority, however, is not unlimited.  Any regulation of time, place, and manner must not violate other portions of the Constitution.  *See, e.g.*, *Smith v. Allwright*, 321 U.S. 649, 661–62 (1944) ("Texas is free to conduct her elections and limit her

---

[12]Contrary to the RPT's assertion, *Schaefer* and *Campbell* do apply to the present case.  While it is true that they concerned facially unconstitutional statutes, the reasoning holds for an as-applied challenge.  Both emphatically hold that a pre-election residency requirement is unconstitutional and do not limit their holdings to their particular facts.

14

electorate as she may deem wise, save only as her action may be affected by the prohibitions of the United States Constitution . . . ."). In addition, "while states enjoy a wide latitude in regulating elections and in controlling ballot content and ballot access, they must exercise this power in a reasonable, nondiscriminatory, politically neutral fashion." *Miller v. Moore*, 169 F.3d 1119, 1125 (8th Cir. 1999). There is evidence that Benkiser did not act reasonably and with political neutrality when she declared DeLay ineligible. Indeed, the district court's description of the events surrounding the letter sent by DeLay imply, at the very least, a lack of neutrality. Dist. Ct. Op. at *5 n.5 (explaining that Benkiser had personally revised a previous draft of DeLay's letter).

More to the point, even had Benkiser acted "with political neutrality," her actions would not fall within the limited authority delegated to the states under the Elections Clause. The "manner"[13] of elections "encompasses matters like 'notices, registration, supervision of voting, protection of voters, prevention of fraud and corrupt practices, counting of votes, duties of inspectors and canvassers, and making and publication of election returns.'" *Cook v. Gralike*, 531 U.S. 510, 523–24 (2001) (quoting *Smiley v. Holm*, 285 U.S. 355, 366 (1932)). Benkiser's

---

[13]The RPT does not suggest that Benkiser's actions affect the time or place of elections.

15

determination of ineligibility does not fall within this definition of the "manner" of elections.

The RPT argues that the determination did affect merely the "manner" of elections because the act was procedural and predictive. Assuming the RPT's argument is correct, the problem with the theory is that the TDP makes an as-applied challenge. Despite the RPT's attempt to classify the declaration as merely predictive, the evidence shows that it was not.[14] Benkiser's declaration was based on DeLay's current residence, not his inhabitancy on election day. Simply put, her declaration of ineligibility was not a mere predictive, ministerial act affecting the "manner" of the election. It was a direct determination of DeLay's qualifications as a candidate. As such, the declaration was unconstitutional and cannot be saved by the Elections Clause.

The RPT also contends that the declaration of ineligibility is a permissible "manner" regulation because DeLay is a frivolous candidate and removing "frivolous" candidates from the ballot constitutes "protection of voters" under Supreme Court precedent. This argument fails. Whenever the Supreme Court has discussed the states' authority to prevent "frivolous" candidates from appearing on the ballot, it has been in the context of a candidate that will only receive minimal support in an election. *See U.S. Term Limits*,

---

[14]Q: [N]othing that you have in these public documents indicates to you where Mr. DeLay will be on election day, does it?

A [Benkiser]: No, it doesn't.

16

514 U.S. at 834; *Storer*, 415 U.S. at 743. There is no evidence that DeLay, the incumbent candidate of a dominant political party, will receive only minimal support. Here, we fail to see how removing DeLay from the ballot would protect the voters, inasmuch as it was the voters themselves who selected DeLay as the Republican candidate for the general election.

Even if Benkiser's declaration could be construed as a "manner" regulation, it would only survive a constitutional challenge if it would not "exclude classes of candidates from federal office." *U.S. Term Limits*, 514 U.S. at 832–33; *see also Schaefer*, 215 F.3d at 1035 (asking whether state action has "the likely effect of handicapping an otherwise qualified class of candidates"). Given that Benkiser's method of application would exclude, or at a minimum handicap, the pool of nonresident prospective candidates, it is unconstitutional under *U.S. Term Limits*.[15]

## C.  The RPT Failed to Meet the Standards of the Ineligibility Statute

Apart from the federal constitutional questions, this case presents a state-law statutory question. For the purposes of this

---

[15]The Secretary of State asks this Court to find the ineligibility statute constitutional by applying the canon of avoidance. As explained above, this is an as-applied challenge to Benkiser's specific acts. Therefore, the canon of avoidance is not an appropriate analytical vehicle. In addition, courts facing similar questions did not even consider the canon. *See Schaefer*, 215 F.3d at 1039; *Campbell*, 233 F.3d at 1235.

17

section, we assume *arguendo* that it would be constitutional for a state actor to make pre-election, prospective judgments about residency and that Benkiser in fact made such a judgment. Even granting those assumptions, the RPT's declaration of ineligibility would violate Texas law because DeLay's future residency was not conclusively established by public record.

## 1. The "Conclusively Established" Standard

The governing standard, "conclusively established," bears emphasis. Something is "conclusive" when, by virtue of "reason," it "put[s] an end to debate or question," usually because of its "irrefutability." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY UNABRIDGED (2002).[16] Accordingly, Texas courts have explained that public records must leave no factual dispute concerning the conclusiveness of ineligibility. *See In re Jackson*, 14 S.W.3d 843, 848–49 (Tex. App.–Waco 2000, orig. pet.) (holding that a state actor under § 145.003 has "no fact-finding authority;" instead, she may "administratively declare that a candidate is ineligible only when the record *conclusively establishes* the candidate's ineligibility") (emphasis in original); *Culberson v. Palm*, 451 S.W.2d 927, 929 (Tex. Civ. App.–Houston [14th Dist.] 1970, orig. pet.) (holding that ineligibility was not conclusively established where there remained "a fact question"). Thus refined, the issue is whether,

---

[16]*See also* BLACK'S LAW DICTIONARY 308 (8th ed. 2004) (defining "conclusive" as "authoritative," "decisive," or "convincing").

based on the evidence properly before Benkiser on June 7, 2006, there remained "a fact question" as to whether DeLay would reside in Texas on election day, November 7, 2006. *Palm*, 451 S.W.2d at 929.

The intersection of § 145.003, which requires that proof of ineligibility be *conclusive*, and the Qualifications Clause, which requires inhabitancy only "when elected," presents an extraordinary burden to declaring a candidate ineligible on residency grounds prior to the election. This is because it is almost always possible for a person to change their residency: to move to the state in question before the election, thereby satisfying the Qualifications Clause.[17]

### 2. DeLay's Future Inhabitancy Was Not "Conclusively Established"

Although the public records relied on by Benkiser may have conclusively established DeLay's present residency in Virginia, they did not conclusively establish whether he will inhabit Texas on election day. Proof of DeLay's present residency may *suggest*

---

[17]Though we do not decide this issue, the "conclusively established" standard might be met by party officials in less uncertain contexts. A candidate's age, for example, can be established conclusively prior to the election. The problem of inherent uncertainty is not an issue in most applications of the statute; it is a function of the particular requirement in question here, future inhabitancy.

As to inhabitancy "when elected," the conclusively established burden may be insurmountable. Although we need not create a *per se* rule to decide this case, we cannot conceive of a situation in which it could be met.

19

where he will be in the future; however, it does not put the matter beyond dispute or question.

Benkiser relied on three public records to declare DeLay ineligible:

1) DeLay's Virginia driver's license;

2) DeLay's Virginia voter registration; and

3) An employment withholding form reflecting DeLay's Virginia residence.

Dist. Ct. Op. at *5. These documents do not *conclusively* establish whether DeLay will be an inhabitant of Texas on November 7, 2006. DeLay could be a current resident of Virginia, as the documents above provide, and nonetheless move back to Texas before November 7. Indeed, Benkiser admitted in her testimony that the public records could not prove DeLay's residency on election day and that DeLay could move back to Texas before election day.

Information that was before Benkiser showing DeLay's eligibility supports this conclusion. Benkiser had before her DeLay's original candidacy application, in which he swore that he was eligible for office. In terms of the Qualifications Clause, such a declaration necessarily contained an implicit promise that DeLay would be an inhabitant of Texas on election day. It is also likely that Benkiser knew—because the RPT confirmed his eligibility in prior elections—that DeLay had been an inhabitant of Texas for decades. Under these circumstances, the public records provided by

20

DeLay could not have conclusively established his future residency. Predicting DeLay's future inhabitancy would have required a finding of fact, which the RPT had no authority to make. *See, e.g.*, *In re Jackson*, 14 S.W.3d at 848–49.

The RPT argues against this analysis on several grounds, none of which is persuasive. First, relying on the language of the statute ("*another* public record"), the RPT contends that "one . . . public record is sufficient for a declaration of ineligibility." If this is true, the RPT contends, surely three public records are sufficient. This argument ignores § 145.003's second requirement: that ineligibility must be conclusively established. Put another way, any number of public records may be sufficient only if they meet the "conclusively established" burden. Such is not the case here.

Second, the RPT relies on *Nixon v. Slagle*, 885 S.W.2d 658, 659 (Tex App.–Tyler 1994, orig. pet.), for the proposition that a prospective candidate's voter registration form showing residence outside the jurisdiction in question is sufficient to conclusively establish ineligibility. The RPT's argument ignores a key difference between *Nixon* and the case at bar. *Nixon* involved Texas's state residency qualification for a state senate seat, which required a candidate to be a resident of the relevant district for a year preceding the election. *See* TEX. CONST. art. III, § 6. Therefore, the question in *Nixon* was the location of the

21

candidate's current residence for state constitutional purposes, 885 S.W. 2d. at 662, not (as here) DeLay's future inhabitancy for federal constitutional purposes. The latter issue is speculative and cannot be proven conclusively by a voter-registration form showing current residence.

Third, the RPT cites *Jones v. Bush*, 122 F. Supp. 2d 713 (N.D. Tex. 2000). Its reliance on that case ignores that *Jones* did not involve Texas's state-law "conclusively established" standard. In addition, the RPT's use of *Jones* obscures that *Jones*'s discussion of inhabitancy was in reference to present, not future, inhabitancy. *Jones*'s definition of the term "inhabitant" cannot make the RPT's effort to predict DeLay's future any more definitive. Contrary to the RPT's suggestion, this Court cannot "presume that DeLay will remain an inhabitant of Virginia;" rather, the fact must be conclusively established by public record under Texas law. It is not.[18]

In conclusion, DeLay's future inhabitancy could not be determined conclusively without a finding of fact. His election-

---

[18]Likewise, *Jones* does not provide a remedy for the constitutional deficiencies in Benkiser's actions. In relying on *Jones*, the RPT points this Court to dicta in a nonbinding decision from a lower court. In *Jones*, the district court held that the plaintiff lacked standing, and only as an alternative holding, in anticipation of appeal, did it address the merits. What it did address concerned "inhabitancy" under the Twelfth Amendment, not the "when elected" language of the Qualifications Clause. The case is plainly inapposite.

22

day inhabitancy outside Texas was not beyond dispute or question. Thus, Benkiser violated § 145.003 by declaring DeLay ineligible.

**D. The Injunction Was An Appropriate Remedy**

Apart from this case's constitutional and statutory merits, the RPT argues that the district court erred in granting the TDP injunctive relief. In addition to prevailing on the merits, a party requesting an injunction must establish that there is a substantial threat of irreparable injury, the threatened injury outweighs the potential injury to the opposing party, and the injunction will not disserve the public interest. *ICEE Distribs. Inc. v. J&J Snack Foods Corp.*, 325 F.3d 586, 597 n.34 (5th Cir. 2003) (citing *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 392 (1981)).

**1. The RPT Waived its "Irreparable Harm" Argument**

In its opening brief, the RPT ties its irreparable harm argument to its standing argument. It argues that the TDP cannot possibly show irreparable harm because it has shown no harm at all. The RPT's lack-of-harm arguments have been addressed above, *see* Part III.A., and found meritless.

For the first time in its reply brief, the RPT argues that the TDP has not shown irreparable harm because it has an adequate remedy at law. We need not consider this argument because the RPT effectively waived it by failing to raise it in its opening brief. *See, e.g., Linbrugger v. Abercia*, 363 F.3d 537, 541 n.1 (5th Cir.

23

2004).  In any event, the legal remedies proposed in the RPT's reply brief would not make the TDP whole.  We therefore reject the RPT's irreparable-harm arguments.

## 2.  The RPT Does Not Make A "Comparative Harm" Argument

The RPT's argument concerning the appropriateness of the injunction centers on the public interest element.  In fact, it never makes on argument concerning the requirement that the TDP's threatened injury must outweigh any potential injury to the RPT.  Given that it has failed to raise an argument on this element, it has certainly not proven that the district court abused its discretion by implicitly finding that the TDP would suffer greater harm.

## 3.  An Injunction Would Not Disserve the Public Interest

The RPT and the TDP make conflicting public interest arguments.  The RPT claims that the district court's injunction reduces voter choice, requiring that an ineligible or unwilling major-party candidate remain on the ballot and prohibiting his replacement with an eligible candidate who would be willing to serve if elected.  The TDP responds that the injunction prevents the RPT from perpetrating, in the district court's phrase, "a fraud on the voters."

It is beyond dispute that the injunction serves the public interest in that it enforces the correct and constitutional

24

application of Texas's duly-enacted election laws.[19]  The RPT's arguments are not sufficiently persuasive to overcome this conclusion.  The RPT has not shown that the injunction disserves the public interest and certainly has not proven that the district court abused its discretion.  Therefore, the RPT has not met its burden.

**E.  We Will Not Consider Whether the District Court Erred by Enjoining the Secretary of State**

As an amicus curiae in support of the RPT, Texas's Secretary of State complains that the district court lacked jurisdiction to enjoin him because he is not a party to this suit.  The RPT, however, does not challenge the scope of the district court's injunction, focusing instead on standing and the merits of the constitutional issue before the court.  "[A]n amicus curiae generally cannot expand the scope of an appeal to implicate issues

---

[19]This conclusion also conforms with legislative intent. Records from the 68th Texas Legislature show that the current withdrawal provision in the Election Code, § 145.036, was drafted to prevent unwarranted replacement candidacies. *See In re Bell*, 91 S.W.3d 784, 785 (Tex. 2002) (holding that "courts may consider the legislative history and the object sought to be attained in construing statutes" and using such history to interpret the Election Code) (internal quotation marks omitted).  Under the former system, a candidate who won the primary could merely decline the nomination, allowing a replacement candidate to run in the general election.  Hearing testimony shows that members of the legislature believed that the former provision allowed a flourishing of "stalking horses." *Hearing on S.B. 122 Before the Senate State Affairs Comm.*, 68th Leg., R.S. 9:15–10:4 (Feb. 7, 1983).  The current withdrawal statute resolves that problem. While a candidate can withdraw at any time, the party can only provide a replacement candidate under very limited circumstances. *See* § 145.036(b).

that have not been presented by the parties to the appeal." *Garcia-Melendez v. Ashcroft*, 351 F.3d 657, 663 n.2 (5th Cir. 2003) (internal quotation omitted). Therefore, we will not consider this issue.

## IV. CONCLUSION

For the reasons stated above, the district court did not err when it held that the Texas ineligibility statute was unconstitutional as applied. In addition, Benkiser failed to meet the standards of the statute because the public records did not conclusively establish DeLay's ineligibility. Finally, the injunction was an appropriate remedy. For these reasons, we AFFIRM.

Appellant's motion for partial stay pending appeal is DENIED AS MOOT. Appellant's second motion for partial stay pending appeal or, in the alternative, motion for full stay is also DENIED.

26