# ATTORNEY GENERAL OF TEXAS

### GREG ABBOTT

November 23, 2009

The Honorable Steve Ogden
Chair, Senate Finance Committee
Texas State Senate
Post Office Box 12068
Austin, Texas 78711-2068

Opinion No. GA-0746

Re: Validity of appropriation of a one-time payment to annuitants of the Teacher Retirement System and the Employees Retirement System (RQ-0801-GA)

The Honorable Jim Pitts
Chair, House Committee on Appropriations
Texas House of Representatives
Post Office Box 2910
Austin, Texas 78768-2910

Dear Senator Ogden and Representative Pitts:

The Eighty-first regular session of the Texas Legislature appropriated funds to the Comptroller of Public Accounts to provide a one-time payment to eligible annuitants of the Teacher Retirement System of Texas ("TRS") and the Employees Retirement System of Texas ("ERS"). You inquire about the statutory and constitutional validity of this appropriation.[1] Essentially you ask whether the Legislature is authorized to make a one-time payment to certain retirees. As discussed below, while the short answer to this question is "yes," the Legislature may do so only in a legally authorized manner. Moreover, the Legislature established an unusual and virtually insurmountable legal standard for making the proposed payment by requiring that this office issue a "conclusive opinion that such one-time payments are constitutionally and statutorily permissible." General Appropriations Act, 81st Leg., R.S., ch. 1424, art. IX, § 17.13(a), (b)(4), (c)(3), 2009 Tex. Gen. Laws 4483, 5375–76 [hereinafter General Appropriations Act]. In order to issue a "conclusive opinion,"[2]

---

[1]Request Letter (*available at* http://www.texasattorneygeneral.gov).

[2]The term "conclusive" is defined as "putting an end to debate or question esp. by reason of irrefutability." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 258 (11th ed. 2004). Both Texas and federal courts recognize this definition of the term "conclusive." *Tex. Democratic Party v. Benkiser*, 459 F.3d 582, 592 n.16 (5th Cir. 2006) (citing WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY UNABRIDGED (2002), BLACK'S LAW DICTIONARY 308 (8th ed. 2004); *Cope v. State*, 39 S.W.2d 891, 892 (Tex. Crim. App. 1931)).

we must be able to irrefutably state that the payments are constitutionally and statutorily permissible.[3]

## I.    Relevant Law

Article IX, section 17.13(a) of the General Appropriations Act for the 2010–11 biennium provides, in relevant part:

> (a)    There is hereby appropriated to the Comptroller of Public Accounts an amount estimated to be $155,248,741 out of the General Revenue Fund which consists of an amount estimated to be $34,723,050 for the Employees Retirement System and an amount estimated to be $120,525,691 for the Teacher Retirement System for the purpose of providing a one-time payment (equivalent to the annuitant's monthly benefit, not to exceed $500) to eligible members of the Employees Retirement System and the Teacher Retirement System as defined below in sections b and c.

General Appropriations Act, art. IX, § 17.13(a), at 5375.

The Comptroller is further directed to transfer these funds to subaccounts within the TRS and the ERS for payment of the referenced amounts. *See id.* Subsection (b) provides additional details for eligible members of ERS. *See id.* § 17.13(b), at 5376. Eligibility for payment to ERS annuitants is restricted to a person who retired from the employee class on or before December 31, 2008, and who is receiving a retirement annuity under certain provisions of chapter 814 of the Government Code. *See id.* Eligibility for payment to TRS annuitants is restricted to a person who retired on or before December 31, 2008, and is made "[c]ontingent on the passage of Senate Bill 2567, or similar legislation authorizing the payment." *Id.* § 17.13(a), at 5375. Senate Bill 2567 did not become law, but similar legislation, House Bill 3347, was enacted to provide for the one-time payment. Act of May 31, 2009, 81st Leg., R.S., ch. 1171, § 5, 2009 Tex. Gen. Laws 3704, 3707.

Payments to both classes of annuitants are also contingent "upon the issuance of an Attorney General opinion that indicates the . . . one-time payments are constitutionally and statutorily permissible." General Appropriations Act, art. IX, § 17.13(a), at 5375. Moreover, "[i]f the Attorney General does not provide a conclusive opinion that such one-time payments are constitutionally and statutorily permissible, amounts appropriated herein shall be transferred" to the respective retirement funds. *Id.* § 17.13(b)–(c), at 5376.

While you do not cite any particular provisions of the Texas Constitution, several are relevant to your question. Article XVI, section 67 authorizes the Legislature to "enact general laws

---

[3]This opinion is limited to the legislative appropriation passed during the 2009 legislative session that is the subject of your opinion request and specifically does not address a retirement system's authority to pay other benefits pursuant to article XVI, section 67 of the Texas Constitution.

establishing systems and programs of retirement and related disability and death benefits for public employees and officers." TEX. CONST. art. XVI, § 67(a). This provision requires the Legislature to establish a Teacher Retirement System and an Employees Retirement System. *Id.* § 67(b)(1)–(2). Sections 44 and 53 of article III prohibit the granting of extra compensation after service has been performed or rendered or after a contract for performance has been entered into. Article III, section 44 provides, in relevant part:

> The Legislature shall provide by law for the compensation of all officers, servants, agents and public contractors, not provided for in this Constitution, but shall not grant extra compensation to any officer, agent, servant, or public contractors, after such public service shall have been performed or contract entered into, for the performance of the same . . . .

TEX. CONST. art. III, § 44. Similarly, article III, section 53 provides in relevant part:

> The Legislature shall have no power to grant, or to authorize any county or municipal authority to grant, any extra compensation, fee or allowance to a public officer, agent, servant or contractor, after service has been rendered, or a contract has been entered into, and performed in whole or in part . . . .

*Id.* § 53.[4] Enabling legislation adopted to authorize the referenced payment to retirees became effective on September 1, 2009, the same date as the General Appropriations Act.[5]

## II.     Analysis

We begin our analysis with the proposition that the referenced appropriations for the benefit of ERS and TRS annuitants are presumed to be constitutionally permissible. *See* TEX. GOV'T CODE ANN. § 311.021 (Vernon 2005) ("In enacting a statute, it is presumed that: (1) compliance with the constitutions of this state and the United States is intended . . . ."); *see also Tex. Mun. League Intergovernmental Risk Pool v. Tex. Workers' Comp. Comm'n*, 74 S.W.3d 377, 381 (Tex. 2002) (stating that a statute must be construed "in a manner that renders it constitutional and gives effect to the Legislature's intent"). In the present instance, however, the Legislature has explicitly waived the applicability of this presumption by conditioning the appropriations on the issuance of a "conclusive opinion" by the Attorney General that the payments are "constitutionally and statutorily permissible." In doing so, the Legislature expressed its concern that the legislation might, in fact,

---

[4]In an analysis of the Texas Constitution, one author states that "[n]ot only is no difference between the sections [44 and 53] recognized by the courts, they sometimes rely on both sections in the same case or use Section 53 cases for precedent in a Section 44 case or vice versa." GEORGE D. BRADEN, THE CONSTITUTION OF THE STATE OF TEXAS: AN ANNOTATED AND COMPARATIVE ANALYSIS 189 (1977).

[5]*See* Act of May 31, 2009, 81st Leg., R.S., ch. 1171, § 5, 2009 Tex. Gen. Laws 3704, 3707 (TRS), *see also* Act of May 29, 2009, 81st Leg., R.S., ch. 1308, § 42, 2009 Tex. Gen. Laws 4099, 4110 (ERS).

not be constitutional. Thus, the question will be reviewed without regard to the presumption of constitutionality.

Briefing received by our office argues that the one-time payments provided under the General Appropriations Act are valid payments under the state retirement systems mandated by article XVI, section 67 of the Texas Constitution.[6] Indeed, the statutes relating to both ERS and TRS authorize the trustees of each system to increase the amount of annual benefits paid to a retiree pursuant to article XVI, section 67 of the Texas Constitution, so long as the funds remain actuarially sound.[7] *See, e.g.*, TEX. GOV'T CODE ANN. §§ 811.006, 814.602 (ERS), 821.006, 824.701 (TRS) (Vernon 2004). Other statutes governing ERS and TRS contemplate supplemental payments under certain defined circumstances, *see id.* §§ 814.603 (ERS), 825.402 (TRS), and as recently as 2007, the Legislature provided for a one-time supplemental payment to TRS retirees. In each of these instances, however, the legislation authorizing the increase in benefits or supplemental payments directs the respective retirement *systems* to make such payments, and in making such payments the *trustees* of those systems had to act in accordance with their authority and attendant duties under article XVI, section 67.

In enacting section 17.13 of the 2010-11 General Appropriations Act, the Legislature circumvented this constitutional framework. Instead, it opted to make a direct appropriation of state funds to the Comptroller for the purpose of providing payments to recipients outside of the trust funds. By utilizing this approach, the Legislature chose to bypass the trustees of the respective retirement systems and thus prevented the funds from becoming trust funds of the respective retirement systems.[8] As discussed above, the Legislature is aware of legal means by which to provide additional benefits to retirees. It conspicuously failed to utilize such approaches during the Eighty-first legislative session, and in bypassing the retirement systems the Legislature rendered suspect any reliance on article XVI, section 67 as authority for such payments. As such, we cannot irrefutably state that the proposed payments are independently authorized under article XVI, section 67. *See* Request Letter and attachments.

The focus of our analysis then shifts to the issue of whether the proposed payments would constitute prohibited "extra compensation" under article III, sections 44 and 53 of the Texas Constitution. The key question when analyzing the proposed payments under these provisions is

---

[6]Brief from Deats, Durst, Owen & Levy, P.L.L.C., on behalf of the American Federation of State, County and Municipal Employees, AFL-CIO, at 1 (July 20, 2009) (on file with the Opinion Committee).

[7]Briefing received by our office raises questions about the actuarial soundness of the trust funds. *See* Brief from Employees Retirement System of Texas, at 2 n.1 (June 26, 2009) (stating that "[a]n increase in the state's overall contributions to the trust funds will bring the fund closer to actuarial soundness") (on file with the Opinion Committee) [hereinafter ERS Brief].

[8]ERS Brief at 2.

whether the payments about which you inquire were authorized under the employment contracts or laws in place at the time the services were provided.[9]

In the situation you describe, the one-time payments authorized by section 17.13 were not made pursuant to or provided for under the statutory retirement plans and were not effective until the effective date of the General Appropriations Act: September 1, 2009. Neither was the general legislation supporting the payments effective until that date.[10] And yet these one-time payments are made to apply only to those individuals who retired, died, or would have otherwise been eligible on or before December 31, 2008. *See* General Appropriations Act, art. IX, § 17.13(a), at 5375. As a result, authority for the one-time payment did not exist during the time those persons were employed or prior to the time they retired.[11] Thus, neither the payment nor its enabling statutes could have formed part of the employment contract of any person eligible to receive the referenced payment. Furthermore, we have found no other law in existence on or before December 31, 2008, and none have been cited to us, that would have authorized the payments.[12] We are therefore obliged to conclude that a court could find that the one-time payments to ERS and TRS retirees, as authorized

---

[9]It has been suggested by ERS that section 17.13 does not, for ERS retirees, contravene the prohibitions of article III, sections 44 and 53 against "extra compensation" because the contemplated payments arguably do not even constitute "compensation," on the ground that the term "compensation," as defined in section 811.001 of the Government Code, does not include supplemental payments. ERS Brief at 3. The TRS statutes do not define the word "compensation." Even if we were to accept ERS's definition of the term "compensation" in the ERS statutes, they would not control the meaning of "extra compensation" for purposes of the Texas Constitution. Moreover, ERS contends that "[t]he '13th checks' that ERS has distributed from the trust funds in the past have never been considered compensation for purposes of the federal [Internal Revenue Code]." *Id.* But, as we have indicated, the payments authorized by section 17.13 cannot be viewed constitutionally as 13th checks precisely because they are not distributions from trust funds under article XVI, section 67. Rather, they are direct payments from the Legislature to the Comptroller that bypass the trustees of the retirement systems.

[10]*See supra* note 5.

[11]Courts "look to the retirement plan and the law governing the plan in effect when the employee entered retirement status" to determine whether a retiree constitutionally may receive a post-retirement increase in benefits. Tex. Att'y Gen. LO-97-113, at 3. *See also* Tex. Att'y Gen. Op. No. JC-0383 (2001) at 2 ("a county generally may not increase a former employee's retirement benefits beyond those for which the county provided at the time of retirement"). If a statutory provision is not in effect during any period of a person's employment, or at the time of retirement, it cannot have constituted a part of his employment contract, and this difficulty raises constitutional concerns.

[12]Section 17.13 also provides that the one-time payments to ERS and TRS annuitants "are due to the availability of" federal funds authorized by the American Recovery and Reinvestment Act of 2009 (the "ARRA"). *See* General Appropriations Act, art. IX, § 17.13(d), at 5376. Some briefs have argued that the ARRA might give rise to federal preemption. *See, e.g.*, Brief from Morgan, Lewis & Bockius, LLP, on behalf of Texas Retired Teachers Association, to Honorable Greg Abbott, Attorney General of Texas, at 16–19 (July 20, 2009) (citing to the ARRA) [hereinafter Morgan Brief]. Although the Legislature indicated that the relevant appropriations were made possible by the availability of ARRA funds, nothing in the ARRA mandates, or even suggests, that those funds are to be expended for the purpose of making a one-time payment to retired teachers or retired state employees. *See* American Recovery and Reinvestment Act of 2009, Pub. L. 111-5, 123 Stat. 115 *passim*. There is certainly no clear statement of Congressional intent to preempt state law or constitutional provisions governing such payments.

by section 17.13 of the 2010–11 General Appropriations Act, might well constitute extra compensation in contravention of both sections 44 and 53 of article III of the Texas Constitution.[13]

The language of section 17.13 requires that "[i]f the attorney general does not provide a conclusive opinion that [the] one-time payments are constitutionally and statutorily permissible," the "amounts appropriated . . . shall be transferred to" the respective retirement systems. General Appropriations Act, art. IX, § 17.13(b)(4), (c)(3), at 5376. Because we cannot *conclusively* opine that such payments "are constitutionally and statutorily permissible," it follows that the relevant appropriated funds must be directed to the Comptroller of Public Accounts for transfer to ERS and TRS in accordance with the directive of section 17.13. These transfers will increase the state contribution rate to ERS from 6.45 percent to 6.95 percent and the state contribution rate to TRS from 6.40 percent to 6.644 percent. General Appropriations Act, art. IX, § 17.13(b)-(c), at 5376. As a brief received from ERS notes, "[a]n increase in the state's overall contributions to the trust fund will bring the fund closer to actuarial soundness, and, therefore, will increase the fund's long-term financial stability. Such a result inures to the benefit of <u>both</u> annuitants and active employees."[14] Moreover, when the funds are actuarially sound, the trustees of the respective systems are independently authorized to consider increases in the benefits paid to retirees.

---

[13]Several briefs have contended that sections 51 and 52(a), article III of the Texas Constitution, which prohibit "any grant of public moneys" to any private individual or corporation, are also implicated by your questions. *See, e.g.*, Morgan Brief at 5–10. Because we have concluded that a court could find that payments authorized under section 17.13, article IX of the General Appropriations Act are invalid under sections 44 and 53 of article III, we need not address that provision's validity under section 51 or 52(a). *See* TEX. CONST. art. III, §§ 51, 52(a).

[14]ERS Brief at 2 n.1.

## S U M M A R Y

The Legislature is authorized to arrange for one-time payments to eligible retirees. To accomplish such payments, the Legislature may appropriate funds directly to the Teacher Retirement System of Texas ("TRS") and the Employee Retirement System of Texas ("ERS") for distribution to retirees of the respective systems. In enacting section 17.13 of the General Appropriations Act, the Legislature chose not to pursue that path. The Legislature instead appropriated funds to the Comptroller for the purpose of providing payments to the recipients outside of the TRS and ERS trust funds. By utilizing this approach, the Legislature chose to bypass the trustees and therefore prevented the funds from becoming trust funds of the respective retirement systems. The path chosen by the Legislature calls into question a reliance on article XVI, section 67 of the Texas Constitution as authority for such payments and raises questions about whether the payments would violate article III, sections 44 and 53 of the Texas Constitution. Because the language of section 17.13 requires a "conclusive opinion that such one-time payments are constitutionally and statutorily permissible" and because the appropriation raises questions about compliance with article III, sections 44 and 53 of the Texas Constitution, the appropriation provision on its very face makes it impossible for us to conclusively opine that such payments "are constitutionally and statutorily permissible."

As a result, the Legislature has mandated that the relevant appropriated funds must be transferred to TRS and ERS in accordance with the directive of section 17.13. Such transfers will bring the trust funds closer to actuarial soundness and thus increase the long-term financial stability of the funds, a result that should benefit both current and future retirees. Moreover, when the funds are actuarially sound, the trustees of the respective systems are independently authorized to consider increases in the benefits paid to retirees.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

ANDREW WEBER
First Assistant Attorney General

JONATHAN K. FRELS
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Rick Gilpin
Assistant Attorney General, Opinion Committee